THE COUNCIL OF THE VILLAGE OF GLENCOE

*v.*

THE PEOPLE *ex rel.* John A. Owen.

1. SERVICE—*return by deputy must be in principal's name.* If summons is served by a regular deputy of a sheriff, the return must be in the name of the latter. The act of the deputy in such case is, in law, the act of the principal.

2. SAME—*rule different when made by a special deputy.* But where summons is served by a special deputy by appointment indorsed thereon, the statute does not require the return, which is to be made under oath, to be in the name of the sheriff.

3. SUMMONS—*description of municipal corporation sued.* Where the municipal government of a village is vested in a council consisting of a president and five councilmen, a summons in a proceeding for a *mandamus* to enforce a public duty against "the council" of the village, will be good, and it need not be directed to "the president and councilmen" of the village.

4. SERVICE—*upon village corporation.* A summons in a suit against the council of a village, in a proceeding to obtain a *mandamus* to compel the performance of a public duty, is properly served upon the president alone.

5. SAME—*of mandamus.* But a peremptory writ of *mandamus* against a municipal corporation is governed by different principles, and must be served upon those persons composing the council at the time of service.

6. VILLAGES—*right to become incorporated under general law of the State.* Where a proper petition is presented to the council of a village incorporated under a special act or charter, praying for an election to vote upon the question of organizing under the general incorporation law, the council have no discretion to refuse to call the election, but should act upon the same at the earliest convenient moment, and appoint judges to hold the election and give notice of the time and place of holding the same.

7. If the council should unreasonably postpone the time for holding the election, and fail to appoint judges to hold it, or neglect to give the proper notice, the courts will compel them to do their duty in this respect by *mandamus.*

8. MANDAMUS—*as to matters of discretion.* Where a discretion is abused, and made to work injustice, it may be controlled by *mandamus.*

9. SAME—*who may prosecute.* Where the object of a proceeding by *mandamus* is the enforcement of a duty in which the public is interested, the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested as a citizen in having the laws executed, and the right in question enforced.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

Mr. CHARLES J. BEATTIE, and Mr. MORTON J. CULVER, for the plaintiff in error.

Mr. JOHN A. OWEN, for the defendant in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This appeal is prosecuted to reverse a judgment of the court below awarding a peremptory *mandamus* against "The council of the village of Glencoe." Several errors are assigned, which we shall proceed to pass on in the order of their presentation by the counsel for the respondent. There was no appearance by the respondent before judgment was

384          VILLAGE OF GLENCOE *v.* THE PEOPLE.    [Sept. T.

Opinion of the Court.

rendered, and it is insisted the respondent was not properly brought before the court.

"The village of Glencoe" was incorporated by an act of the legislature, approved March 29, 1869, by section 1, article 2 whereof, it is enacted: "The municipal government of said village shall be vested in a council, consisting of a president and five councilmen, who shall be elected," etc.

The summons runs to "The council of the village of Glencoe." It is indorsed as follows:

"I hereby depute and appoint J. W. P. Hovey special deputy to serve this writ.   This 9th day of October, 1874.

T. M. BRADLEY, *Sheriff.*"

"STATE OF ILLINOIS, } ss.
     *Cook county.*    }

J. W. P. Hovey, being duly sworn, saith, that he is the special deputy above named, and that he served the within writ on H. B. Wilmarth, president of the council of the village of Glencoe, by reading the same to him, and delivering him a copy thereof, on October 9, 1874.

J. W. P. HOVEY.

Subscribed and sworn to before me this 10th day of October, 1874.

Signed,          JOHN A. OWENS, *Notary Public.*"

And his notarial seal is also affixed.

The specific objections made, are: 1st. The return should have been in the name of the sheriff.   2d. The writ should have been against "The president and councilmen of the village of Glencoe," and it should have been personally served on each of them.

1st. If the service had been by a general deputy, it admits of no controversy, the return should have been in the name of the sheriff.   In such case, the act is, in presumption of law, the act of the sheriff, and the mere return of the service in his name is, ordinarily, conclusive.   This was the English law.   (1 Sharswood's Blackstone, pp. 344–5,

and notes) ; and it is so provided by our statute. (R. L. 1874, Chap. 125, p. 990, § 12.)

But the appointment of a special deputy to make service in a single case, is authorized by other provisions of the statute, having, as we conceive, no dependence upon or connection with those relating to the appointment and duties of general deputies. It must be conceded that it is competent for the legislature to prescribe how and by whom writs shall be served, and what shall be accepted as evidence that they have been served, for we think there can be found no constitutional provision which prohibits the legislature to authorize personal service of process to be made otherwise than by or in the name of the sheriff.

The 10th section of the statute before referred to provides: "A sheriff may appoint a special deputy to serve any summons issued out of a court of record, by indorsement thereon substantially as follows: ' I hereby appoint ———— my special deputy, to serve the within writ,' which shall be dated and signed by the sheriff."

The next section, the 11th, provides: "Such special deputy shall make return in the time and manner of serving such writ, under his oath; and for making a false return, he shall be guilty of perjury," etc. Thus, it will be observed, instead of the requirement being as in the 12th section, where it is required that the general deputy shall act in the name of the sheriff, that is omitted, and it is only required the special deputy shall make return "*under his oath,*" and this, under the pains and penalties of perjury. This difference in phraseology we regard as intended to authorize the return to be made as it was in this instance—the vital requirement being that it shall be *under the oath of the special deputy*. It sufficiently appears, by the appointment indorsed on the writ, and the oath of the special deputy, in what capacity he acted, and the mere form of the return can not, under these circumstances, be held to release the sheriff from liability for his act.

25—78TH ILL.

We think the return, although it might have been more formal to have used the name of the sheriff, is sufficient, under the statute.

2d. The duty sought to be enforced is claimed to be imposed upon "The council of the village of Glencoe." No other branch of the municipality has anything to do with it. The writ was, therefore, properly directed. *The People ex rel.* v. *The Mayor, etc., of Bloomington,* 63 Ill. 208.

The object of the writ is to coerce the performance of a duty which is claimed to be obligatory on the council as a body, without regard to the individuals who compose that body. There might, therefore, be an entire change in the members composing the council, without in anywise affecting the proceeding. The duty sought to be enforced, although to be discharged by one branch of the corporate body, is, nevertheless, a corporate duty, and the proceeding might with equal propriety, have been against the corporation, the ultimate result being precisely the same. See Dillon on Municip. Corps. § 701.

We are of opinion, therefore, that service upon the president, which is authorized by § 7, R. L. 1874, p. 775, in suits against villages, is sufficient. The peremptory writ, however, is governed by different principles, and should be served upon those composing the council at the time of the service.

The next question to which our attention is invited is, does the petition show sufficient grounds, conceding, as we must, its allegations to be true, for issuing the peremptory writ?

The allegations material to the question are: The village of Glencoe is incorporated under a special charter; that, on the 16th day of July, 1874, a petition, signed by thirty voters of the village, among whom was the relator, was presented to the council of the village, (the president and trustees of said village, in whom all legislative authority is vested, being designated in the village charter as "The council of Glencoe,") which council was then in session, requesting the council to submit the question, whether said village will be organized as a

village under the act of the legislature of this State, in force
July 1, 1872, entitled "An act to provide for the incorpora-
tion of cities and villages," to the decision of the legal voters
of said village; that, at the same time, a motion was made
by a member of the council that the question be submitted
to the legal voters of the village, at an election to be called
for that purpose on the 4th day of August, 1874, which mo-
tion was laid over, by a vote of the council, until the next
meeting thereof; that, at the next meeting of the council, no
action was had on the petition; that, at a meeting of the
council, held on the 10th day of August, 1874, motion was
made that the election prayed by the petition be held on the
first Tuesday of October, 1874; another member of the coun-
cil moved to amend this motion by substituting the first Tues-
day of April, 1875, for the first Tuesday of October, 1874,
which was adopted; and the council then ordered the elec-
tion prayed for to be held on the first Tuesday of April, A. D.
1875, but did not designate any place for holding the election,
or select any judges therefor; nor did they cause any notice
to be given of the time and place of holding such election,
and they have taken no other action in regard to such elec-
tion.

It is alleged that the designation of the first Tuesday in
April, 1875, is an unreasonable postponement of the time of
holding the election prayed for; that it is the day designated
by the present village charter for holding the annual election
for village officers; that the designation of such time was
made with the purpose and intention of unlawfully postpon-
ing, and defeating the will of the voters of the village upon
the question of reorganization; and it is stated, as the opin-
ion of the relator, that it is the intention of a majority of the
council to defeat said election by a failure to discharge the
duties enjoined by the law.

It is argued by the respondent, the fixing of the time at
which the election shall be held, is a matter of discretion, in
which the council can not be interfered with by the courts.

By section 1, article 11, of the statute relating to "cities, villages and towns," (R. L. 1874, p. 242,) it is enacted: "Any town in this State, incorporated either under any general law for the incorporation of towns, and acts amendatory thereof, or under any special act for the incorporation of any town or village, may become organized as a village, under this act, in the manner following: Whenever any thirty voters in such town shall petition the president and trustees thereof to submit the question, whether such town will become organized as a village, under this act, to the decision of the legal voters thereof, it shall be the duty of such president and trustees to submit the same accordingly, and to fix a time and place within such town for holding such election, and to appoint the judges to hold such election, and to give notice of the time, place and purpose of such election by causing at least five notices thereof to be posted in public places in such town, for at least fifteen days prior to holding such election."

It is obvious, the council had no discretion, when the proper petition was presented, whether the prayer of the petition should be granted or not. The petition being in conformity with the statute, it was the plain duty of the council to act upon it at the earliest convenient moment, fix the time and place of holding the election, select the judges therefor, and give the required notice thereof. But, inasmuch as no time is designated by the statute when the election shall be held, there was some discretion, necessarily, in the council, in this regard. The implication of law, however, is, that the time fixed should be within a reasonable period, in view of all the circumstances. Precisely what would be a reasonable period, might, in many instances, be of extremely difficult solution; instances of what would be an unreasonable period, can more readily be imagined, which will serve the present purpose for illustration. Had the election been postponed for ten years, or even five years, it would need no argument to show that it would amount, practically, to a denial of the right guaranteed to the petitioners. No

one would pretend the discretion vested in the council could justify this. So it would seem to be equally clear, that any postponement, not authorized by some apparent public necessity, would be unjustifiable. The discretion vested in the council can not be exercised arbitrarily, for the gratification of feelings of malevolence, or for the attainment of merely personal and selfish ends. It must be exercised for the public good, and should be controlled by judgment, and not by passion or prejudice. When a discretion is abused, and made to work injustice, it is admissible that it shall be controlled by *mandamus.* Tapping on Mandamus, (Am. Ed.) 66.

The change desired to be effected in the municipal government of the village, through an election, was such as materially affected every citizen and tax-payer of the village. The petition was based on what were supposed sufficient reasons, having reference to the *then existing* state of affairs. If reform, to be brought about through this means, was needed, and desired by a majority of the voters of the village, it was a wrong and an outrage that they should be compelled to submit to the evils they labored under, for another year, when the change might reasonably be effected within a month. If there were leeches on the treasury—a vicious revenue system, imperfect police regulations—in the opinion of a majority of the voters, to be gotten rid of only through change in the organic law, they were entitled to have the change made as soon as it was practicable, and every day they were forced to submit to the continuance of the evils beyond that period, was so much arbitrary oppression by the council.

We can imagine no public necessity justifying the postponement of the election from the 16th day of July, 1874, to the first Tuesday of April, 1875. It has every appearance of an attempt, on the part of those filling the council, to perpetuate their own power to the utmost possible period, notwithstanding and in defiance of the wishes of the people. It is not admissible that this conduct shall be excused by the respondent assuming that a majority of the electors did not concur with

390 VILLAGE OF GLENCOE *v.* THE PEOPLE. [Sept. T.

Opinion of the Court.

the thirty petitioners, and therefore the election would have involved the village in useless expense. That was the question to be settled by the election, and it could in no other way be settled. The law gave the thirty electors the right to have the election, and to have it within a reasonable time, and its unnecessary postponement was in violation of that right.

The allegation of the petition, moreover, that this postponement was to defeat the will of the electors, is, by the default, to be taken as true. Thus, it is conceded, the discretion in the council was abused, and perverted to the attainment of an unjustifiable end.

If this postponement may be excused, it must follow, the council may, in the exercise of its discretion, indefinitely postpone the calling of the election, between which, and an absolute refusal to call the election, the distinction is only in form, and not in substance.

We have no hesitancy in saying the case is one in which *mandamus* properly lies.

The only remaining objection is, that the prosecution is carried on by a private citizen, and not by a public prosecutor.

The relator shows that he is a resident, voter and tax-payer of the village.

It was said, in *The County of Pike* v. *The State*, 11 Ill. 207: "The question, who shall be the relator in an application for a *mandamus*, depends upon the object to be attained by the writ. * * * Where the object is the enforcement of a public right, the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested, as a citizen, in having the laws executed, and the right in question enforced." See, also, *City of Ottawa* v. *The People*, 48 Ill. 235; *Hall et al.* v. *The People*, 57 id. 310.

These cases hold a different rule from that announced by the cases referred to by the respondent, but are conclusive here.

The public prosecutor might, undoubtedly, have instituted this prosecution, but his failure to do so is no reason why the citizens, tax-payers and voters of the village shall be denied the right to have the council perform its duty.

The remarks in *The People ex rel. Stine* v. *Supervisors*, 47 Ill. 259, referred to by the counsel for respondent, are not pertinent. They had reference simply to a contract, in which the contracting party was asking no aid of the court, and had no allusion to the case of a failure to perform a public duty.

We are of opinion there is no error in the record, and the judgment must therefore be affirmed.

*Judgment affirmed.*