[S. F. No. 9842. In Bank.—December 12, 1921.]

## TULARE WATER COMPANY (a Corporation), Appellant, v. STATE WATER COMMISSION et al., Respondents.

[S. F. No. 9845. In Bank.—December 12, 1921.]

## TULARE WATER COMPANY (a Corporation), Appellant, v. STATE WATER COMMISSION et al., Respondents.

[1] WATERS AND WATER RIGHTS—STATE WATER COMMISSION—APPLICATION FOR APPROPRIATION—ARBITRARY DENIAL.—The State Water Commission created by the act of the legislature (Stats. 1913, p. 1012) does not possess and could not be invested with power to arbitrarily deny an application made in conformity to the act for the appropriation of water that is subject to appropriation.

[2] ID.—PERMITS FOR APPROPRIATION OF WATERS—POWERS OF COMMISSION.—The State Water Commission under the act of 1913 has only supervisorial discretion in the matter of granting permits for the appropriation of unappropriated waters of the state.

[3] ID.—EXERCISE OF DISCRETIONARY POWERS—MANDAMUS.—*Mandamus* is a proper remedy to compel a reasonable exercise of such discretionary powers as are granted by the act creating the State Water Commission.

[4] ID.—COMMISSION WITHOUT JUDICIAL POWERS — CONSTITUTIONAL LAW.—In view of section 1 of article VI of the constitution vesting in the courts therein mentioned the entire judicial power of the state, it is not within the power of the legislature to give to the State Water Commission the judicial power to establish and declare the right and title to private property. (Concurring opinion of Shaw, C. J.)

APPEALS from judgments of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Reversed and affirmed.

The facts are stated in the opinion of the court.

Edward F. Treadwell, Berkeley B. Blake and Forrest A. Cobb for Appellant.

L. D. Bohnett for Respondents.

SLOANE, J.—The petitioner, Tulare Water Company, appellant in these actions, applied to the State Water Commission for a permit to appropriate water of the Kern River for the purpose of irrigating agricultural lands.

The application was in due form and in conformity with the provisions of the act of 1913 creating a Water Commission and providing for the presenting and granting of petition to make such appropriations (Stats. 1913, p. 1012).

The application was denied without a hearing by the commissioners, and the petitioner thereupon instituted a proceeding in *mandamus* before the superior court of the city and county of San Francisco to compel the granting of such permit.

A demurrer was sustained to the petition for writ of mandate, without leave to amend, and judgment was made and entered for the defendants. Petitioner thereupon took an appeal from this judgment to the district court of appeal of the first appellate district.

Being uncertain as to its remedy, petitioner also instituted a proceeding in the superior court for a writ of *certiorari*, to review and annul the action of the Water Commission in denying without a hearing its application for leave to make its water appropriation.

This petition was likewise denied upon the sustaining of demurrer thereto, and an appeal was taken to the court of appeal from this judgment also.

Both appeals come to this court upon an order granting a hearing after judgment in the district court of appeal in favor of petitioner in the *mandamus* case and in favor of respondent on the writ of review.

As both appeals involve a general construction of the powers and duties of the Water Commission under the act of 1913, we will consider them together.

The first contention of the petitioner is that upon the presentation of an application in due form and in compliance with the rules of the Water Commission it became the duty of the commission as a ministerial act to issue a permit for the appropriation asked for, and that the issuance of such permission may be enforced by *mandamus;* and, secondly, that if the commission has any judicial function in the matter there was a refusal to exercise it in passing upon the application presented, and its action in the matter is subject to review by *certiorari* as being in excess of its jurisdiction.

Section 17 of the Water Commission Act provides that "Any person, firm, association or corporation may apply for and secure from the state water commission, in conformity with this act and in conformity with reasonable rules and regulations adopted from time to time by the state water commission, a permit for any unappropriated water or for water which having been appropriated or used flows back into a stream or lake or other body of water within this state. . . . "

Section 15 provides that "The state water commission shall allow, under the provisions of this act, the appropriation of unappropriated water or of the use thereof, or of water or the use thereof which may hereafter cease to be appropriated, or which may hereafter be declared to be unappropriated, or which having been used under claim of riparian proprietorship or appropriation finds its way back into a stream, lake or other body of water and also such water as is declared by section 11 of this act to be subject to appropriation."

Section 11 defines with greater particularity what waters are subject to appropriation, including riparian waters that have not been applied to riparian lands within a specified time.

Petitioner claims a full compliance with all the requirements of the act and of the rules and regulations of the commission in preparing and presenting its application, and no point is made by respondents of any omission in this respect.

It must be assumed, then, on the pleadings, that the petitioner complied with, and has in the pending matter pleaded, all the conditions required to entitle it to a permit to ap-

propriate such quantity of the waters of the Kern River as it could put to beneficial use for the purposes alleged, and which was at the time unappropriated.

If any discretion was vested in the commission, or any matter submitted for judicial consideration, it was to determine whether there was any unappropriated water in the Kern River at that time subject to this proposed appropriation.

[1] The commission surely does not possess and could not be invested with power to arbitrarily deny an application made in conformity to the law for the appropriation of water that was subject to appropriation.

The purpose of the act is clearly to permit any person or corporation desiring to make any of the enumerated beneficial uses of waters of the state, not otherwise utilized, to avail itself of this right of appropriation.

Under the law in force prior to the adoption of this act (Civ. Code, secs. 1410–1422) no permission was required for the appropriation of waters of the state. All that was required to create a preferential right to such water was to actually appropriate it to some authorized beneficial use, or to make a water filing to be followed with due diligence by an actual user.

The obvious aim of the Water Commission Act was not to abolish, but to regulate and administer, this privilege.

The positive right to such permit is granted by section 17 of the act to any person who makes application as provided by the act and the rules of the commission. The mode and manner of making the application is prescribed. But what is the jurisdiction granted to the commission in determining the status of the water supply or the priority of rights thereto and in ascertaining if the water claimed is subject to appropriation?

The commission is authorized by section 10 "to investigate. for the purpose of this act all streams, stream systems, portions of stream systems, lakes or other bodies of water, and to take testimony in regard to the rights of water or the use of water thereon or therein, and ascertain whether or not such water, or any portion thereof, or the use of said water or any portion thereof, heretofore filed upon or attempted to be appropriated by any person, firm, association or corporation, is appropriated under the laws of this state."

While it appears from the provisions above quoted that the act is intended to authorize an investigation, and the exercise of some degree of discretion by the Water Commission as to the sufficiency of the application, and as to the existence of water subject to appropriation, no formal hearing is prescribed, and no authority granted to judicially determine the fact as to unappropriated water, or to adjudicate conflicting claims that might exist thereto. Even if a hearing could be required, the commission is without jurisdiction to finally determine the existence or nonexistence of water subject to appropriation, and in such a case its denial of an application, if held to be a judicial determination of the right, would leave the petitioner without remedy, as no appeal is provided for, and *certiorari* would only go to the regularity of the proceeding and not to the merits of the ruling.

[2] In view of the several other powers and duties devolving upon the Water Commission under this act in the supervision of the distribution of water subject to appropriation, and in determining the rights and obligations of interested parties, in which hearings of a judicial nature are provided for with much particularity, and provision is made for review of action of the Water Commission by the courts, it is fair to conclude that it was not intended to grant to the commission in the matter of this preliminary permit to file upon unappropriated water more than a supervisorial discretion in the matter of granting such permits. At any rate, it is manifestly impracticable for the Water Commission to authoritatively determine that there is not water in a given stream subject to appropriation. What is unappropriated water is a constantly fluctuating question, depending upon the seasonal flow of the stream, the annual rainfall, the forfeiture of prior appropriations and default in the use of riparian rights. To conclude the rights of would-be appropriators by the extrajudicial and perhaps arbitrary action of a board of water commissioners would be to deprive such applicant of a valuable property right without due process of law.

[3] Under such conditions *mandamus* is a proper remedy to compel a reasonable exercise of such discretionary powers as are granted by the act. It is well settled that *mandamus* will issue to correct an abuse of discretion, if the case is

otherwise proper.   (*Wood* v. *Strother,* 76 Cal. 545, [9 Am.
St. Rep. 249, 18 Pac. 766]; *Ex parte Bradley,* 7 Wall. 377,
[19 L. Ed. 214, see, also, Rose's U. S. Notes]; *State* v. *Lafay-
ette Co.,* 41 Mo. 226; *Village of Glencoe* v. *People,* 78 Ill.
382; *People* v. *Superior Court,* 10 Wend. 285; *Hammel* v.
*Neylan,* 31 Cal. App. 22, [159 Pac. 618].)

As in all cases of ministerial duty the obligation to per-
form depends upon the determination of the existence of
certain prerequisite facts, but where such facts exist, the duty
is mandatory.

Mere authority to decide as to the existence of a given fact
does not necessarily take the official or board so deciding
beyond the reach of a writ of mandate, especially where
there is no remedy by appeal.

This doctrine is well stated in a note to *Weeden* v. *Town
Council,* 98 Am. Dec. 375, citing in its support *Rex* v. *Jus-
tices,* 1 W. Black. 606; *Commonwealth* v. *Justice,* 2 Va. Cas.
9, and is as follows: "For instance, the law may confer a
right upon a person or tribunal, judicial or otherwise, which,
on being shown that these acts were done, is directed to con-
cede the right, or to issue some evidence of it.   In such cases
it is manifest that some intelligence and judgment must be
employed in determining whether the designated facts exist.
But the examining person or tribunal may capriciously de-
termine that the acts have not been performed, and with-
hold the right, or the evidence of it.   If there is no remedy
by resort to some appellate proceeding, the courts must
either investigate the questions involved, and by *mandamus*
compel appropriate action, or suffer the injured party to be
capriciously denied a right to which he shows himself un-
questionably entitled, and we think that all fair minded
courts will compel the requisite action by *mandamus.*"

The same rule is recognized in *Wood* v. *Strother, supra.*
The action was a proceeding in *mandamus* to compel the
auditor of San Francisco to countersign a street assessment
warrant under an act which required that before signing
he "shall examine the contract, the steps taken previous
thereto, and the record of assessments, and must be satisfied
that the proceedings have been legal and fair."   The argu-
ment against the writ was that the statute requires the audi-
tor to examine the proceedings, and satisfy himself that they
are legal before signing; and that if he has examined them

and become satisfied that they are not legal, the most that can be said is that he has committed an error in a matter confided to his discretion, and that the function of the writ is not to review such exercise of discretion. The opinion, however, after reviewing many authorities on the subject, says: "In view of the foregoing cases, it seems a mere perversion of language to say that a writ will never issue to control judicial action, or compel a tribunal to act in a particular way. It is by no means intended to assert that the writ could issue in this state in all the cases above referred to. The propriety of the issuance of the writ in any case must depend upon whether, under the law of the state where the litigation arises, the determination was intended to be final; and if not, upon whether the system of practice furnishes any other adequate remedy. These things might be different in different states; but the cases cited serve to show that the formulas above mentioned are not universally and literally true, and that it is dangerous to reason from them as if they were so.

"In every case the tribunal that is to act must determine in the first instance whether the case is a proper one for its action. And in our opinion the true tests are whether its determination is intended by law to be final; and if not, whether there is any other 'plain, speedy, and adequate remedy.' If the determination of the tribunal was intended to be final, it is plain that it cannot be disturbed, either on *mandamus* or in any other way. If it was not intended to be final, but there is another 'plain, speedy, and adequate remedy,' the writ cannot issue; for it was not designed to usurp the place of other remedies. But if the determination was not intended to be final, and there is no other adequate remedy, the writ must issue. Otherwise there would be an admitted wrong without a remedy. The writ issues in such case to prevent a failure of justice. And this is its ancient office. In the language of Lord Mansfield: 'It was introduced to prevent disorder from a failure of justice and defect of police. Therefore, it ought to be used upon all occasions where the law has established no specified remedy, and where, in justice and good government, there ought to be one.' "

*Stockton R. R. Co.* v. *Stockton*, 51 Cal. 328, 338, was a proceeding by *mandamus* to compel the delivery to petitioner

of certain bonds. It was urged by respondent that under the statute governing the matter the bonds could not be issued until the common council certified to certain facts. This the council refused to do on account of alleged failures to comply with the conditions. Niles, J., writing the opinion in the case, says:

"On this theory the common council might forever defeat the delivery of bonds, by declining to be satisfied, even though it appeared by the most convincing proof that the road in every minute particular had been constructed and stocked in the manner and within the time prescribed by the statute. We had a similar question before us in the case of the *People* v. *Supervisors of Alameda,* 45 Cal. 395. In that case a petition, signed by the requisite number of qualified electors, had been presented to the board of supervisors, requesting that an election be called on the question of removing the county seat. The board refused to order an election, and an alternative writ of *mandamus* was issued out of this court. The proceedings for the removal of the county seat were had under section 3976 et seq. of the Political Code; and in its answer to the suit the board set up as one of its defenses that, under the statute, it was its duty to determine whether the petition was signed by the requisite number of qualified electors, and it was not satisfied from the proofs offered in support of the petition that it was so signed; and for that, among other reasons, had declined to order an election. We struck out this portion of the answer, as constituting no defense, and ordered an issue to be tried whether, in point of fact, the petition was signed by the requisite number of qualified electors. Our view of the law then was, and yet is, that if an official duty is to be performed on the happening of an event, the officer cannot arbitrarily or capriciously refuse to perform it, after the event has happened, on the plea that he is not satisfied that it has happened. If the fact exists, and is established by sufficient proofs, it is his legal duty to be satisfied, and to act accordingly."

In *Iglin* v. *Hoppin,* 156 Cal. 484, [105 Pac. 582], a case quite similar in its facts to the one before us, it was there sought by *mandamus* to compel the supervisors of Yolo County to subscribe a specific order theretofore given by them denying the application of petitioner to have certain

lands in a reclamation district set off into an independent district, and to enter an order granting the petition. A general demurrer was sustained on the ground that exclusive jurisdiction to determine the facts upon which the order was made was vested by the legislature in the supervisors, and that their action could not be reviewed by *mandamus* proceedings. The opinion holds that upon the facts pleaded and taken as admitted on the demurrer the petitioners were entitled to relief by *mandamus*.

In *Puterbaugh* v. *Wadham*, 162 Cal. 611, [123 Pac. 804] this court has said: "It is undoubtedly true that the writ of *mandamus* is not a writ of error and that, generally speaking, it is not available for the purpose of altering or varying in any particular the finding of a judicial or *quasi*-judicial body or officer acting within its or his appropriate jurisdiction; but where the facts are not disputed and the only matter to be determined is the duty of the body or officer under the law, the court will define such duty and enforce not only its performance, but the carrying out of the obligations of the respondent body or officer in a particular manner."

To the same effect is the decision in *Harleson* v. *San Joaquin Irr. Dist.*, 20 Cal. App. 324, [128 Pac. 1010].

These citations are at least sufficient authority for holding in the matter before us that the trial court was in error in sustaining the demurrer to the petition for writ of mandate. All the allegations of the petition must be taken as true on demurrer, and such petition alleged all the facts required to entitle the petitioners to the relief demanded.

The judgment is reversed as to the proceeding for writ of mandate, with direction to the trial court to overrule the demurrer and hear the cause on the merits.

As to the petition for writ of review, there being no judicial powers vested in the Water Commission, so far as applies to the matter before us, the judgment thereon is affirmed.

Wilbur, J., Lennon, J., and Shurtleff, J., concurred.

SHAW, C. J., Concurring.—I concur in the opinion of Mr. Justice Sloane, so far as it deals with the question of the appeal from the judgment of the court below denying a writ of mandate, being the appeal S. F. No. 9842.

I think, however, that something more may properly be said on the question whether or not the Water Commission, in exercising the power conferred upon it by the sections of the statute particularly considered in the opinion, may, under some circumstances, act in a judicial capacity. It is obvious that if it does so it will be taking property of one person and giving it to another; in other words, that it will be exercising powers which cannot be exercised except by courts authorized by the constitution.

Section 1 of article VI of the constitution declares that "The judicial power of the state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, district courts of appeal, superior courts and such inferior courts as the legislature may establish in any incorporated city or town, township, county, or city and county."

If the Water Commission is acting judicially it is doing so because it is determining the rights and titles of individuals to private real property, and in that capacity it would be acting as a court as fully as a court of general jurisdiction would be acting when it adjudicates the title to real property. (*Quinchard* v. *Board of Trustees,* 113 Cal. 669, [45 Pac. 856]; *People* v. *Board,* 122 Cal. 424, [55 Pac. 131]; *Rhode Island* v. *Massachusetts,* 37 U. S. (11 Pet.) 718, [9 L. Ed. 697, see, also, Rose's U. S. Notes]; *Prentis* v. *Atlantic etc. Co.,* 211 U. S. 226, [53 L. Ed. 150, 29 Sup. Ct. Rep. 67]; *Marin etc. Co.* v. *Railroad Com.,* 171 Cal. 712, [Ann. Cas. 1917C, 114, 154 Pac. 864].)

[4] The effect of section 1, article VI, aforesaid, is to vest in the courts therein mentioned the entire judicial power of the state. It is not within the power of the legislature to vest in any other body any general judicial power to establish and declare the right and title to private property. The Water Commission is not one of the superior courts of the state and could not be made such court or be given the powers thereof, and it is not an inferior court with jurisdiction limited to incorporated cities, or towns, townships, counties, or cities and counties. On the contrary, its jurisdiction is statewide. Consequently, it is not a court which comes within the purview of said section 1 and it is not within the power of the legislature to give that commission such judicial power. (*Western etc. Co.* v. *Pillsbury,* 172 Cal. 413, [Ann. Cas. 1917E, 390, 156 Pac. 491]; *Pacific etc.*

*Co.* v. *Pillsbury*, 171 Cal. 322, [153 Pac. 24].)   There is no other section of the constitution which purports to confer power upon the legislature to invest such commissions with judicial power of this nature.   Certain judicial powers may be invested in the Industrial Accident Commission and in the Railroad Commission, but with these exceptions all the general judicial power of the state must be vested in the courts named in the constitution and in such inferior courts of local jurisdiction as may be established under said section 1.

For this reason I am of the opinion that the act confers no judicial power upon the Water Commission, and if it purported to do and so far as it may purport to do so it would be and is without effect.   The consequence is that any award it assumed to make in the exercise of such purported judicial power would be absolutely void and that *certiorari* would not lie to review its action in that regard.