[Sac. No. 4157. In Bank.—July 5, 1929.]

THE YUBA RIVER POWER COMPANY (a Corporation), Appellant, v. NEVADA IRRIGATION DISTRICT (an Irrigation District) et al., Respondents.

William F. Humphrey and Hadsell, Sweet & Ingalls for Appellant.

C. F. Metteer, H. J. March and Orrick, Palmer & Dahlquist for Respondents.

PRESTON, J.—This case arises under the Water Commission Act (Stats. 1913, p. 1012) now being administered by the department of public works, division of water rights. To the issue made by the complaint a demurrer was interposed and sustained without leave to amend, followed by judgment for defendants. ■■■ Three propositions are to be taken as true in disposing of the question in controversy; first, that appellant has fully complied with each and every provision of the above-mentioned act entitling it to receive preferential right to appropriate certain amounts of water from the Yuba River; second, that unappropriated water sufficient to comply with the applications flows in the stream; third, that appellant is prepared to put the water sought to be appropriated to a beneficial use.

The question, then, for decision is this: Is appellant, who seeks to appropriate available water and in the status above described, authorized under section 738 of the Code of Civil Procedure, prior to the issuance of a permit, to bring an

action in equity in the nature of a suit to quiet title to determine the adverse claims to use of the water so sought as between itself and an upper claimant who threatens to invade the right of priority thus claimed?

Admittedly plaintiff has four applications pending and in good standing, one dated February 17, 1920, one dated September 10, 1920, and two dated April 9, 1923, to appropriate large quantities of the water of the Yuba River to be used for power and irrigation purposes. The allegations of the complaint are that the waters claimed are available in the stream and that plaintiff has the ability to make beneficial use of them; that defendants assert the right to appropriate and use said waters by diverting them from the stream at a point above plaintiff's points of intended diversion; that defendants assert and claim said rights in hostility and priority in time and right to plaintiff's applications, but that said rights, if any such exist, are subsequent and subject to the applications of plaintiff; that said defendants are proceeding to divert and use the waters of said Yuba River sought by plaintiff, claiming that their rights are prior in time and right to said applications of plaintiff; that there are not enough unappropriated waters in said stream to satisfy the applications of plaintiff and at the same time to satisfy the asserted rights of defendants to appropriate and use said waters.

Section 738 of the Code of Civil Procedure provides: "An action may be brought by any person against another who claims an estate or interest in real or personal property, adverse to him, for the purpose of determining such adverse claim. . . . " The word "property" found in this section is a broad term and is specifically defined in sections 654 and 655 of the Civil Code. The word is also defined as follows: "The term 'property' is sufficiently comprehensive to include every species of estate, real and personal, and everything which one person can own and transfer to another. It extends to every species of right and interest capable of being enjoyed as such upon which it is practicable to place a money value. As applied to lands the term comprehends every species of title, inchoate or complete. It is supposed to embrace those rights which lie in contract—those which are executory as well as those which are executed." (22 R. C. L., p. 43, sec. 10.)

In *McKeon* v. *Bisbee*, 9 Cal. 137, 142 [70 Am. Dec. 642], dealing with a mining claim upon public lands, this court, as early as 1858, said: "Property is the exclusive right of possession, enjoying, and disposing of a thing; it is 'the right and interest which a man has in lands and chattels, to the exclusion of others'; and the term is sufficiently comprehensive to include every species of estate, real or personal." The court there sustained the execution sale of the interest of a miner in his mining claim.

In *People* v. *Eddy*, 43 Cal. 331, 336, 337 [13 Am. Rep. 143], it is said: "The word 'property' is used in that section of the Constitution in its ordinary and popular sense, and this is the general rule in the interpretation of Constitutions and statutes, unless the context shows that the words are used in a technical or in some arbitrary sense."

Respondents admit that by the filing of said applications plaintiff received "procedural priority" and concede that this "procedural priority" may itself be property in that it may be assigned or transferred, but it is insisted that such property right is a different right from an interest or estate in the use of the water applied for. This concession goes a long way toward demonstrating that the position of appellant herein is the correct one. But respondents contend that inasmuch as a broad discretion is resposed in the division of water rights by the statute in the matter of applications of this character, having the power at will, it is said, to approve, modify or reject them, the mere filing of an application is insufficient upon which to claim a right in either real or personal property. Moreover, it is contended that were a court of equity in a suit of the character here to attempt to determine the rights of a mere claimant, it would assume to itself administrative functions, which it cannot constitutionally do.

The effect of an application in proper form has been declared by the statute to be as follows: " . . . And any application so made shall give to the applicant a priority of right as of the date of said application to such water or the use thereof until such application shall have been approved or rejected by said commission, provided, that such priority shall continue only so long as the provisions of law and the rules and regulations of the water commission

shall be followed by the applicant. . . . " (Sec. 17, Water Commission Act, Stats. 1913, p. 1022.)

 Respondents seem clearly to have mistaken the status of appellant, who has complied with all the requirements of law and has found available water to appropriate. The granting of a permit is merely confirming evidence of the right theretofore existing. It is not the right itself. The application cannot be arbitrarily rejected. This is the plain holding of this court in *Tulare Water Co.* v. *State Water Com.*, 187 Cal. 533, 537 [202 Pac. 874, 876], wherein this court sustained a proceeding in mandate to compel the state water commission to entertain a complaint having the purpose to direct the commission to issue the permit, saying that: "To conclude the rights of would-be appropriators by the extrajudicial and perhaps arbitrary action of a board of water commissioners would be to deprive such applicant of a valuable property right without due process of law." (See, also, *Rich* v. *McClure*, 78 Cal. App. 209 [248 Pac. 275].)

The court in said cause (*Tulare Water Co.* v. *State Water Com.*, *supra*) further clearly intimated that neither the question of priority between claimants nor the existence or nonexistence of unappropriated waters in a stream were questions to be finally determined by the water commission. The effect of this holding was sought to be obviated by the enactment of a new section, known as 1b (Stats. 1923, p. 162), providing for a hearing by the superior court upon applications for permits to appropriate water. This court, in *Mojave River Irr. Dist.* v. *Superior Court*, 202 Cal. 717 [262 Pac. 724], declared said enactment invalid and sustained the pronouncements of the court in *Tulare Water Co.* v. *State Water Com.*, *supra*, to the effect that no judicial power had been or could be lawfully conferred upon the state water commission or its successor. This doctrine is also set forth in *Department of Public Works* v. *Superior Court*, 197 Cal. 215 [239 Pac. 1076].

From the admitted facts of the complaint before us, plaintiff could have compelled the issuance of a permit and certainly by virtue of section 17 of the act is entitled to enjoy for all practical purposes, pending the action upon its application, the status of a permittee. In fact, the alle-

gations of the complaint, if true, show a trespass upon the preferential rights of appellant.

From another standpoint we have a precedent sufficient to control our action in this case. Prior to the enactment of the Water Commission Act, we had in existence sections 1410–1422, inclusive, of the Civil Code, which furnished a method of controlling the question of priority in the appropriation of unappropriated waters of the state. The present law was not enacted to abolish the right of appropriation of water. No attributes are added to constitute the right. The new legislation is designed "merely to regulate and administer this privilege." Therefore, the pronouncement of this court on the question of priority in the appropriation of waters should and does shed light upon, if not control, the issue before us.

In the case of *Inyo Cons. Water Co.* v. *Jess*, 161 Cal. 516 [119 Pac. 934], where the court had under consideration the rights of a claimant by virtue of five notices of appropriation, posted and recorded as provided in section 1415 of the Civil Code and appellant bought an action under section 738 of the Code of Civil Procedure to determine conflicting claims between himself and defendant to the right to use the waters of Cottonwood Creek in Inyo County, the court sustained the demurrer to this count of the complaint upon the theory that it did not show that plaintiff owned any subsisting interest in or right to said water or the use thereof. It was respondent's contention that the right was not a vested right and was not property and that it would not be protected against adverse claimants by a statute of this character. The court said, in discussing certain previous California cases:

"They lay down the rule that a right to the use of running water does not vest in possession at common law, until there has been an actual diversion and beneficial use of the water. But they all recognize, and some of them declare, that, before any actual diversion or use of the water, a claimant may acquire an incipient, incomplete, and conditional right to the future use of the water, by beginning the construction of the works necessary for such diversion and use, and, in good faith, diligently prosecuting the same toward completion. . . .

"The purpose of the code was to afford a more perfect protection for such rights and to facilitate the subsequent acquisition of the title to the use. Previously, the incomplete right could be acquired only by some open, visible work to that end, upon the ground, accompanied by a declaration of the intent. Disputes would naturally arise as to priority between different diversions from the same stream at places far apart. The code endeavors to avoid this by providing for the posting of a notice at the proposed dam, and declaring that such notice secures a prior right, without any work, for the period of sixty days thereafter. (*Wells* v. *Mantes,* 99 Cal. 586 [34 Pac. 324].) Thus there is given that which it is said did not exist before (*Kelly* v. *Natoma Water Co.,* 6 Cal. 105), a constructive right to the use of the water, a right existing only by publicly declared intent, and which may be made a perfect and complete title, as against all except prior users and riparian owners, by beginning the work within sixty days, diligently prosecuting it to completion, and thereupon actually using the water. This incomplete right, although not as yet a title, is an interest in the realty. Under section 738 of the Code of Civil Procedure, the person who has an interest in real property may maintain an action to determine the validity of a conflicting claim which is adverse to his own claim. It follows that the first count states a cause of action and that the general demurrer thereto should be overruled."

In the case of *Merritt* v. *City of Los Angeles,* 162 Cal. 47 [120 Pac. 1064], the court, referring to the same subject and in discussing the form of relief allowable, used this language: "Such judgment, of course, should not declare the plaintiff absolutely entitled to the water, nor enjoin the defendant from taking or using it during the intervening time prior to the completion of plaintiff's works to a stage which will enable him to divert and use it. It should only declare and describe the plaintiff's contingent right to use the water and enjoin adverse claims or uses injurious thereto. If the plaintiff's right shall have terminated at or before the time of trial, the judgment should be for the defendant. If the defendant's right is paramount, but does not include all the waters of the stream, the judgment may so declare and fix the plaintiff's contingent right in the surplus at such time as there is an excess over defendant's use."

We cannot distinguish these cases from the situation before us. The right being protected and administered is the same. A period of priority was provided and the protection given there was during such statutory period and prior to any actual construction of diversion works.

If it be conceded that all the division of water rights may do is of a ministerial and not of a judicial character, it does not follow that justiciable questions may not arise from the action or inaction of that body as well as from the rights conferred by the statute itself. We have already seen that the alleged right to arbitrarily deny the issuance of a permit raises a judicial question; also that the existence of water subject to appropriation under a permit is a judicial question. Priority among permittees is also a judicial question, whatever the stage of operations thereunder. These deductions follow because of the plain provisions of our general remedial law.

Counsel is confusing the power of the division, which of necessity is not judicial, with the rights conferred by the statute, which give rise to judicial questions.

The determination of the issues tendered by this complaint may be of incalculable value to both sets of litigants; likewise through this action information useful to the division of water rights may be acquired. Not only may the question of priority be determined, but upon the issue, if controverted, may also be determined the amount of water subject to appropriation flowing in the stream as well as the restrictions, if any, which surround its use. The division of water rights can finally dispose of none of these questions. Neither can it act judicially upon any of them.

The judgment is reversed, with directions to the court below to overrule the demurrer and to permit defendants to join issue on the allegations of the complaint.

Curtis, J., Shenk, J., Seawell, J., Langdon, J., Richards, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices present concurred.