[S. F. No. 15056. In Bank.—September 11, 1934.]

EAST BAY MUNICIPAL UTILITY DISTRICT (a Municipal Utility District), Petitioner, v. DEPARTMENT OF PUBLIC WORKS OF THE STATE OF CALIFORNIA et al., Respondents; CALAVERAS PUBLIC UTILITY DISTRICT, Intervener.

T. P. Wittschen, L. W. Irving and Harold Raines for Petitioner.

U. S. Webb, Attorney-General, C. C. Carleton and Henry Holsinger for Respondents.

Joseph H. Huberty for Intervener.

Virgil M. Airola and Glenn West, as *Amici Curiae* on Behalf of Respondents.

PRESTON, J. — Proceeding in *mandamus*. The issue is presented by the petition, answer thereto and demurrer to the answer. Petitioner is a public corporation and respondents are the statutory successors of the commission created by the Water Commission Act (Stats. 1913, p. 1012, as amended; Deering's Gen. Laws, 1931, vol. 3, p. 4998, Act 9091; Pol. Code, secs. 348–359b, 363–363gg).

Acting upon information which would justify the preferment of irrigation and domestic uses over power use of the unappropriated waters of the Mokelumne River, respondents inserted in the permit issued to petitioner for the utilization of such waters, the following condition: "The right to store and use water for power purposes under this permit shall not interfere with future appropriations of said water for agricultural or municipal purposes." Respondents assert that under sections 15 and 20 of said act as amended, this discretionary administrative power was conferred upon them.

Section 15, as amended in 1921 (Stats. 1921, p. 443), reads as follows: "The state water commission shall allow,

under the provisions of this act, the appropriation for beneficial purposes of unappropriated water under such terms and conditions as in the judgment of the commission will best develop, conserve and utilize in the public interest the water sought to be appropriated. It is hereby declared to be the established policy of this state that the use of water for domestic purposes is the highest use of water and that the next highest use is for irrigation. In acting upon applications to appropriate water the commission shall be guided by the above declaration of policy. The commission shall reject an application when in its judgment the proposed appropriation would not best conserve the public interest.''

Petitioner insists that to insert the above-quoted provision in the permit was to exercise a judicial function, which could not be done by said state agency under the decisions of this court. (*Tulare Water Co.* v. *State Water Com.*, 187 Cal. 533 [202 Pac. 874]; *Mojave Irr. Dist.* v. *Superior Court*, 202 Cal. 717 [262 Pac. 724]; *Yuba River etc. Co.* v. *Nevada Irr. Dist.*, 207 Cal. 521 [279 Pac. 128].)

Said amended section 15 has not as yet been interpreted by this court, although its present rendering was in existence when the case of *Tulare Water Co.* v. *State Water Com.*, *supra*, was decided. There the court quoted the original section but did not consider it as amended. It should also be noted that early in the history of our jurisprudence it was recognized that the legislative department of the government should be allowed to delegate to bureaus and commissions the exercise of a certain amount of discretion respecting matters which required findings of fact and the deducing of conclusions therefrom, in much the same manner as judicial processes are employed by the courts.

This situation was well described in the case of *Gaylord* v. *City of Pasadena*, 175 Cal. 433, 436 [166 Pac. 348], as follows: '' . . . it has become increasingly imperative that many *quasi*-legislative and *quasi*-judicial functions, which in smaller communities and under more primitive conditions were performed directly by the legislative or judicial branches of the government, are entrusted to departments, boards, commissions, and agents. No sound objection can longer be successfully advanced to this growing method of -

transacting public business. These things must be done in this way or they cannot be done at all, and their doing, in a very real sense, makes for the safety of the republic, and is thus sanctioned by the highest law. For as the Supreme Court of the United States declares: 'Indeed, it is not too much to say that a denial to Congress of the right, under the Constitution, to delegate the power to determine some fact or the state of things upon which the enforcement of its enactment depends, would be "to stop the wheels of government" and bring about confusion, if not paralysis, in the conduct of the public business.' . . . " (*Union Bridge Co.* v. *United States*, 204 U. S. 364 [27 Sup. Ct. 367, 51 L. Ed. 523].)

This principle has been applied to various statutes as will be disclosed by the following, among other cases: *Ex parte Whitley*, 144 Cal. 167, 179 [77 Pac. 879, 1 Ann. Cas. 13]; *Tarpey* v. *McClure*, 190 Cal. 593, 600 [213 Pac. 983]; *People* v. *Monterey Fish Products Co.*, 195 Cal. 548 [234 Pac. 398, 38 A. L. R. 1186]; *Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 Pac. 784]; *People* v. *Globe Grain & Mill. Co.*, 211 Cal. 121 [294 Pac. 3]; *Carter* v. *Stevens*, 211 Cal. 281 [295 Pac. 28]; *In re Weisberg*, 215 Cal. 624, 632, 633 [12 Pac. (2d) 446].

But the above observations only partially determine the question here presented. "The fact that a public agent exercises judgment and discretion in the performance of his duties does not make his action or powers judicial in their character." (*Quinchard* v. *Board of Trustees*, 113 Cal. 664, 670 [45 Pac. 856].) Underlying the question before us is the distinction between the exercise of judicial and legislative power. For if the acts to be done are of legislative cognizance, then it is proper to delegate, within certain limits, such legislative functions to an administrative agency.

The opinion of Mr. Justice Field in the *Sinking-Fund Cases*, 99 U. S. 700, 761 [25 L. Ed. 496], sets forth this distinction as follows: "The distinction between a judicial and a legislative act is well defined. The one determines what the law is, and what the rights of parties are, with reference to transactions already had; the other prescribes what the law shall be in future cases arising under it. Wherever an act undertakes to determine a question of

right or obligation, or of property, as the foundation upon which it proceeds, such act is to that extent a judicial one, and not the proper exercise of legislative functions.''

This definition was approved by this court in the case of *People* v. *Oakland Board of Education,* 54 Cal. 375, 377, where, in about the year 1880, the board of education of Oakland displaced the McGuffey series of readers in the public schools with the Appleton series. After quoting the above language of Justice Field, the court there continued as follows: ''The Board acted upon the proposition before it as one of policy or expediency, aiming to adopt that which, in its judgment, would be best for the constituency which it represented. Its action was then political or legislative, and was in no proper sense judicial in its character. It is conceded that the Board exercised its judgment in the action which it took, but this it was called to do in the exercise of its legislative functions. It is apparent that the exercise of judgment is not the criterion by which this proceeding must be viewed to determine its character. To render it the exercise of a judicial function, its judgment must act in a matter which is judicial in the sense above indicated.''

To the same effect see *Wulzen* v. *Board of Supervisors,* 101 Cal. 15, 24 [35 Pac. 353, 40 Am. St. Rep. 17]; also the Quinchard case, *supra,* where, speaking of the nature of the action of the board in the initiation of a street improvement proceeding, the court said (113 Cal., pp. 669, 670): ''The judgment which they exercise in ordering the improvement is not a determination of the rights of an individual under existing laws, but is the conclusion or opinion which they form in the exercise of the discretionary power that has been entrusted to them, and upon a consideration of the public welfare and demands for which they are to provide. This discretion and opinion is a part of the legislative power that has been conferred upon the city, and is of the same character as that exercised by the legislature itself in providing for the general welfare of the state, and is equally independent of supervision by the judiciary.'' See, also, *Mabray* v. *School Board,* 162 Miss. 632 [137 So. 105, 106].

Under the statute before us, unless and until the statutory requirements and conditions are met, the appli-

cant obtains no property right or any other right against the state. If the statutory prerequisites are not present, the application may be rejected in its entirety or, as here done, a permit may be issued with qualifications as to use of the water, and under neither hypothesis would it be the exercise of judicial authority. Of course, it must always be kept in mind that the state authority cannot arbitrarily, and upon caprice only, reject an application. Clearly, the manner in which the unappropriated waters of the streams of the state shall be distributed among the applicants therefor involves questions of policy, and the legislature, in the interest of the public welfare, may prescribe reasonable conditions and priorities in such distribution. This is true even though the filing of an application would, under certain conditions, be a sufficient foundation for a justiciable issue as against some other claimant. Where the facts justify the action, the water authority should be allowed to impose, in the public interest, the restrictions and conditions provided for in the act.

The cases of *Tulare Water Co.* v. *State Water Com., supra,* and *Mojave Irr. Dist.* v. *Superior Court, supra,* are not at all at variance with this conclusion. The point emphasized in those cases is that the issuance of such permits is not the exercise of a judicial function and, therefore, is not reviewable by a court proceeding, either general or under special act of the legislature.

The case of *Yuba River etc. Co.* v. *Nevada Irr. Dist., supra,* holds no more than this: That an applicant who has complied with the statute has sufficient legal status, although no permit may have yet issued, to authorize him to institute a court action to determine conflicting claims between himself and other claimants to the water subject to appropriation. But this holding is far from being an adjudication of the question before us. As already noted, when an applicant files his application and all the prerequisite facts set forth in the statute are present, the state agency may not arbitrarily refuse the granting of the permit but may be compelled by *mandamus* to issue it; but unless all the conditions are present, the water authority may grant a qualified permit consonant with such conditions, or may, if justified, reject the application altogether.

These views make it unnecessary to consider the effect upon petitioner's application of the Statutes of 1927, chapter 286, which authorize the department of finance to make filings on unappropriated waters on behalf of the state for use in carrying out its plans and purposes to conserve the water resources of the state. Likewise, it is unnecessary to consider whether the relation to the state of all unappropriated waters has been changed by section 3, article XIV, of the Constitution, interpreted along with section 11 of the Water Commission Act, as construed in the case of *Gin S. Chow* v. *City of Santa Barbara,* 217 Cal. 673, 695 [22 Pac. (2d) 5].

It follows from the above that the petition must be dismissed, and it is so ordered. The petition of intervener is disallowed.

Curtis, J., Waste, C. J., Shenk, J., Thompson, J., and Seawell, J., concurred.

Rehearing denied.