[Civ. No. 18023.   First Dist., Div. Two.   Nov. 20, 1958.]

MARY H. O'CALLAGHAN, Appellant, v. THE PEOPLE et al., Respondents.

George D. Collins for Appellant.

Edmund G. Brown and Stanley Mosk, Attorneys General, James E. Sabine, Assistant Attorney General, Ernest P. Goodman and Eugene B. Jacobs, Deputy Attorneys General, for Respondents.

MARTINELLI, J. pro tem.*—Plaintiff Mary H. O'Callaghan sought a decree quieting title to certain real property located in Contra Costa County. She appeals from the judgment holding that the property was subject to valid and subsisting liens of the defendant State of California.

The evidence shows that on March 19, 1947, three months before her marriage to Maurice O'Callaghan, appellant contracted to purchase the real property which is the subject of this litigation. The property was conveyed by a joint tenancy deed to appellant and O'Callaghan as joint tenants. Appellant and O'Callaghan signed a joint note for payment of the purchase price of the property and on August 18, 1949, they jointly executed a deed of trust and signed a joint note to the Bank of America to secure a loan for the construction of improvements on the property. On April 28, 1950, O'Cal-

*Assigned by Chairman of Judicial Council.

laghan signed a verified and recorded notice of completion of the improvements.

During the years 1935 through 1938, O'Callaghan had incurred sales tax liability to the state and certificates of delinquency were filed for record in San Francisco County on March 4, 1940, May 1, 1940, and April 6, 1940. New certificates were filed in San Francisco County in 1944, 1945, 1949 and 1950 extending the liens created by the initial filings. On June 13, 1951, certificates were filed for record in both San Francisco County and Contra Costa County and were rerecorded in Contra Costa County on February 23, 1956. A portion of O'Callaghan's indebtedness was secured by a lien based on a recorded abstract of judgment, first filed for record on July 12, 1937, in San Francisco County. It was again recorded in that county in 1942, 1947 and 1951 and was recorded in Contra Costa County in 1951 and 1956.

The trial court found that appellant and O'Callaghan ". . . have held, and now hold, the property . . . in joint tenancy." It was found that O'Callaghan ". . . on March 19, 1947, acquired, and now owns, an undivided one-half interest in the property," and further that the property ". . . was purchased and improved with the joint credit and community assets . . ." of O'Callaghan and appellant. As to the liens created by the initial filing for record of the certificates and abstract of judgment, the court found that such liens were extended by the subsequent recordation in San Francisco and Contra Costa Counties.

Appellant contends that the evidence does not support the above findings that the property was held in joint tenancy. She cites her testimony that the down-payment and all subsequent payments on the property were from her own separate funds. Some of the checks purportedly given in payment were introduced in evidence and these checks were drawn on appellant's separate bank accounts. Appellant testified that she had no knowledge of the claims against her husband until on or about June 12, 1951.

The evidence is clearly sufficient to support the findings of the trial court. Respondents established a prima facie case that the property was held in joint tenancy by the evidence that the deed was taken in joint tenancy. (*King* v. *King*, 107 Cal.App.2d 257, 259 [236 P.2d 912].) This case was supported by evidence that both appellant and O'Callaghan signed the note for the purchase price, both executed a deed of trust and both signed a note to secure funds for

improvement of the property. The evidence of these acts of ownership of O'Callaghan, performed with appellant's knowledge, clearly contradicted or impeached appellant's testimony that O'Callaghan held the property in trust for her. The signing of the deed of trust and the recording of the notice of completion could be held to be acts repudiating the oral trust. Even if appellant's testimony was uncontradicted, the trial court was not required to believe or accept it. (*Hicks* v. *Reis,* 21 Cal.2d 654 [134 P.2d 788] ; *Bordenave* v. *Franchise Tax Board,* 158 Cal.App.2d 291, 293 [322 P.2d 260] ; Code Civ. Proc., § 1847.)

Appellant contends that the purported liens of the State are of no effect because the abstract of judgment and the certificates of delinquency were not filed for record in Contra Costa County within three years after the amounts claimed were due. The due dates for these amounts all were earlier than January 1, 1939, and the first filing for record in Contra Costa County was on June 13, 1951. Appellant argues that since a lien does not attach to real property of a debtor until an abstract of judgment is recorded in the county where the property lies, the June 13, 1951 recordation must be held to be an initial filing and the liens asserted by the State are thus ineffective, barred by the three year statute of limitations provided for in sections 6738 and 6757 of the Revenue and Taxation Code.

These sections state the procedures for creation and extension of liens for amounts required to be paid under the Sales and Use Tax Law.

Section 6738 provides: "An abstract of the judgment or a copy may be filed for record with the county recorder of any county. From the time of the filing the amount required to be paid together with interest and penalty set forth constitutes a lien upon all the real property in the county owned by the person liable or afterwards and before the lien expires acquired by him. The lien has the force, effect, and priority of a judgment lien and shall continue for five years from the date of the judgment so entered by the county clerk unless sooner released or otherwise discharged. The lien may within five years from the date of the judgment or within five years from the date of the last extension of the lien in the manner herein provided, be extended by filing for record in the office of the county recorder of any county an abstract or copy of the judgment and from the time of such filing the lien shall

be extended to the real property in such county for five years unless sooner released or otherwise discharged.''

Section 6757 provides: ''If any amount required to be paid to the State under this part is not paid when due, the board may within three years after the amount is due file for record in the office of any county recorder a certificate specifying the amount, interest, and penalty due, the name and address as it appears on the records of the board of the person liable for the same, and the fact that the board has complied with all provisions of this part in the determination of the amount required to be paid. From the time of the filing for record, the amount required to be paid together with interest and penalty constitutes a lien upon all real property in the county owned by the person or afterwards and before the lien expires acquired by him. The lien has the force, effect and priority of a judgment lien and shall continue for five years from the time of the filing of the certificate unless sooner released or otherwise discharged. The lien may, within five years from the date of the filing of the certificate or within five years from the date of the last extension of the lien in the manner herein provided, be extended by filing for record a new certificate in the office of the county recorder of any county and from the time of such filing the lien shall be extended to the real property in such county for five years unless sooner released or otherwise discharged.''

There is no question that the liens in the instant case could have been and were extended in San Francisco County by timely rerecordation of the abstract of judgment and the certificates. It is equally clear that these liens would attach to any property of O'Callaghan in San Francisco County acquired at any time during the period from the initial recordation to the present time. That is the purpose for permitting the extension of liens.

Appellant is correct in her contention that in order for a lien to attach to real property of a debtor the filing for record must be accomplished in the county where the real property is situated (29 Cal.Jur.2d, Judgments, § 288, p. 266; *Home Owners' Loan Corp.* v. *Hansen*, 38 Cal.App.2d 748, 755 [102 P.2d 417]). However, this does not require a conclusion that the filing for record in Contra Costa County did not accomplish an extension of the liens originally created in San Francisco County.

The fact that the liens did not attach to the Contra Costa property until the recordation of June 13, 1951, does serve

to refute appellant's contention that if her construction of these code sections is not correct, ownership of land will be detrimentally affected requiring a search of records in every county before title can be determined.

If the Legislature intended to restrict the extension of liens to the same county where the initial filing for record of the abstract of judgment or certificate was made, this intention could have been clearly expressed. Both section 6738 and 6757 provide that a lien may be extended by filing for record an abstract of judgment or a new certificate ". . . in the office of the county recorder of *any county* and from the time of such filing the lien shall be extended to the real property in *such* county for five years . . ." (Emphasis added.)

A reasonable construction of these code sections requires that the words "any county" be given some meaning. The use of the word "any" would seem to negative the contention that the procedure for the extension of liens is restricted to the county where the initial filing for record was made. ■ "[A] reasonable construction of a statute is to be preferred and effect is to be given to all of its parts, including all the words therein contained which are to be interpreted according to their common acceptation." (*Emmolo* v. *Southern Pac. Co.*, 91 Cal.App.2d 87, 92 [204 P.2d 427] ; Civ. Code, § 3542.)

"An interpretation which gives effect is preferred to one which makes void." (Civ. Code, § 3541.) The restrictive construction contended for by appellant would require the Board of Equalization, in order to effectively administer the remedy provided in these sections, to initially record abstracts of judgments and certificates in every county in the state. It cannot be assumed that the Legislature intended to create such a burdensome procedure. ■ We are impelled to the conclusion that the purpose of sections 6738 and 6757 was to insure effective and fruitful collection of delinquent taxes and that the Legislature undoubtedly was aware of the possibility that at the time the tax became due the taxpayer might not possess real property. Therefore, what might be termed an "ambulatory lien" was created which would attach to subsequently acquired property in any county. By providing for the preservation and extension of this lien by the process of periodic recordation of the abstract of judgment or certificate in any county, the Legislature must have intended that there be no time or area limitation preventing this ambulant lien from attaching.

■ Virtually appellant would contend that the recordation must be in *every* (emphasis ours) county in order that a prospective lien might one day attach—a conclusion approximating an absurdity repugnant to the clear provisions of the legislative intent.

The liens were properly extended in Contra Costa County and they became effective against the property of O'Callaghan in that county. None of the liens were barred by the statute of limitations and, therefore, the judgment should be affirmed.

For the above reasons the judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 14, 1959. Carter, J., was of the opinion that the petition should be granted.