[Civ. No. 39623. Second Dist., Div. Five. Oct. 24, 1972.]

MARTHA H. WRIGHT, Plaintiff and Appellant, v.
STANDARD ENGINEERING CORPORATION et al., Defendants;
STATE BOARD OF EQUALIZATION, Intervener and Respondent.

## COUNSEL

Hollister, Brace & Angle, John S. Poucher for Plaintiff and Appellant.

P. F. Caruso for Defendants.

Evelle J. Younger, Attorney General, Philip C. Griffin, Rodney Lilyquist, Jr., and Lawrence Keethe, Deputy Attorneys General, for Intervener and Respondent.

## OPINION

**COLE, J.**[*]—This appeal presents a narrow question concerning priority of claims between plaintiff-appellant Martha H. Wright on the one hand and respondent State Board of Equalization on the other hand.

The common debtor was Standard Engineering Corporation. In February of 1965 plaintiff sued Standard on a note and two days later caused a writ of attachment to be levied on the funds of Standard in the possession of First Western Bank in Los Angeles and upon all of the assets of Standard at its Los Angeles County place of business.

Thereupon, Standard, another defendant in the action below not involved in this appeal, and plaintiff stipulated to the appointment of a receiver ". . . as an alternative to the attachment proceedings in effect," the receiver to take charge of all of the assets of Standard wherever they were situated. An appropriate court order appointing a receiver was issued.

On June 9, 1965, respondent recorded a certificate in Los Angeles County with respect to unpaid sales and use taxes of Standard. In August of 1965, plaintiff secured judgment against Standard.

In June of 1966, respondent obtained a warrant levying upon the account of Standard in Los Angeles and pursuant to that warrant received $507.82 from the sheriff.

The final account and report of the receiver showed that the principal receivership asset consisted of a dealer's reserve account which Standard had had with a thrift and loan company in an amount in excess of $10,000. The receiver did not commence to come into the possession of

---

[*]Assigned by the Chairman of the Judicial Council.

these sums until 1969 and thereafter, receiving the final payment in May of 1971.

The respondent and plaintiff stipulated that the state had tax claims against Standard in the sum of $2,462.47 with interest thereon; that the plaintiff had a judgment claim against Standard in the sum of $33,196.23 with interest thereon; that the $507.82 previously received by the state should be treated in the same manner as the larger sum claimed by the state and that the court should determine the priority between plaintiff and the State Board of Equalization.

Following hearing and reconsideration, the court ordered that the clerk deliver to respondent the amount claimed by it, and further ruled that the state should retain the $507.82 already secured by it.

Two statutes are of principal concern: sections 6756[1] and 6757[2] of the Revenue and Taxation Code.

It is clear that the priority of a tax lien depends solely on legislative

---

[1]Section 6756: "The amounts required to be paid by any person under this part together with interest and penalties shall be satisfied first in any of the following cases:
 (a) Whenever the person is insolvent.
 (b) Whenever the person makes a voluntary assignment of his assets.
 (c) Whenever the estate of the person in the hands of executors, administrators. or heirs is insufficient to pay all the debts due from the deceased.
 (d) Whenever the estate and effects of an absconding, concealed, or absent person required to pay any amount under this part are levied upon by process of law.
 "This section does not give the State a preference over any recorded lien which attached prior to the date when the amounts required to be paid became a lien.
 "The preference given to the State by this section shall be subordinate to the preferences given to claims for personal services by Sections 1204 and 1206 of the Code of Civil Procedure."

[2]Section 6757: "If any amount required to be paid to the state under this part is not paid when due, the board may within three years after the amount is due file for record in the office of any county recorder a certificate specifying the amount. interest, and penalty due, the name and address as it appears on the records of the board of the person liable for the same, and the fact that the board has complied with all provisions of this part in the determination of the amount required to be paid. From the time of the filing for record, the amount required to be paid together with interest and penalty constitutes a lien upon all property in the county owned by the person or afterward and before the lien expires acquired by him. The lien has the force, effect, and priority of a judgment lien and shall continue for 10 years from the time of the filing of the certificate unless sooner released or otherwise discharged. The lien may, within 10 years from the date of the filing of the certificate or within 10 years from the date of the last extension of the lien in the manner herein provided, be extended by filing for record a new certificate in the office of the county recorder of any county and from the time of such filing the lien shall be extended to the property in such county for 10 years unless sooner released or otherwise discharged. The lien imposed by this section shall not be valid insofar as personal property is concerned as against a purchaser for value without actual knowledge of the lien."

enactment and we must, therefore, look to these two sections to determine the rights of the parties. (*Home Owners' Loan Corp.* v. *Hansen,* 38 Cal.App.2d 748 [102 P.2d 417].)

With respect to both sections 6756 and 6757, plaintiff argues that the statutes apply only to property *owned* by Standard. Plaintiff asserts that the priority given to the state by section 6756 cannot operate because the dealer's reserve account was in the hands of the receiver and therefore was not part of taxpayer's "assets," "estate," or "effects" referred to in that section. Further, argues plaintiff, the language of section 6757 by itself shows it creates a lien upon all property in the county "owned" by the tax debtor or thereafter acquired by him.

Plaintiff's argument is that the receiver was the owner of Standard's assets and that therefore the respondent acquired no priority. Principal reliance is placed on *North* v. *Cecil B. DeMille Productions, Inc.,* 2 Cal.2d 55 [39 P.2d 199]. That case, dealing with whether a receiver was a proper party plaintiff, pointed out that the receiver gets all rights to possession of the defendant's property and has equitable title to it and that a defendant retains only the formal legal title in trust for the receiver. This result, apt in one setting, does not aid plaintiff. As plaintiff recognizes, the term "owned" and its cognates depend for their significance upon the connection in which they are used. It would be a strained interpretation of Revenue and Taxation Code sections 6756 and 6757 to hold that the receiver's appointment somehow deprived Standard of its interest in its property to such an extent that the state could never have a claim against it.

Plaintiff's problem stems from a misunderstanding of the nature of a receiver's duties. It is true that the function of the receiver is to aid the court in preserving and managing the property involved in a particular lawsuit for the benefit of those to whom it can ultimately be determined to belong. (*Free Gold Mining Co.* v. *Spiers,* 135 Cal. 130, 132 [67 P. 61].) ■ But it is likewise true that: ". . . As a custodian subject to the orders of the court, he becomes clothed with the title of the debtor, and takes the property *cum onere,* in the plight and condition existing at the time of his appointment, subject to all liens and equities, including the right of set-off, and impressed with the legal and equitable rights and claims of creditors. [Citations.]

■ "The receiver does not occupy the status of an assignee. His function is that of a minister of the court in possession of the property, *to the end of conserving the rights of everybody having any interest; and no lien or contract is disturbed or altered by the court's intervention.* [Cita-

tions.]"[3] (*H. D. Roosen Co.* v. *Pacific Radio Pub. Co.,* 123 Cal.App. 525 [11 P.2d 873]; italics added.)

But argues plaintiff, section 6756 was intended to give to the state "when it has failed to obtain a lien, first call over other creditors who likewise do not have liens of any kind." (*Durkin* v. *Durkin,* 133 Cal.App.2d 283, 286 [284 P.2d 185].) *Durkin* held that the priority accorded by section 6756 is " '. . . intended to apply in cases of insolvency where the state would otherwise be required to share upon an equal footing with general creditors . . . .' " *Durkin* v. *Durkin, supra,* 133 Cal.App.2d at page 286, quoting from *People* v. *Biscailuz,* 95 Cal.App.2d 635, 642 [213 P.2d 753]. *Durkin* and *Biscailuz* cannot comfort plaintiff. In *Biscailuz* the state was claiming the status of the holder of a first lien, despite its failure to follow the statutory procedure which would have entitled it to a lien; the state's claim was there asserted against a valid prior lien (an attachment which had been levied).

In *Durkin* the appellate court held that a creditor to whom some of the moneys in question had been assigned previously by the debtor was entitled to priority against the state. The court held that the assignment was valid. Therefore the state, without a prior claim of its own, could not prevail against the third party assignee who, by means of the prior assignment, was the owner of the property. (See also *People* v. *Biscailuz,* 107 Cal. App.2d 71 [236 P.2d 591].) Two other creditors, however, claimed priority based on writs of attachments and execution. The liens obtained by levy of these writs had expired by operation of time. The appellate court held that as to them, the state's claim was prior.

Plaintiff argues that she was more than a general creditor because she had levied an attachment on Standard's assets at its place of business and on its funds in the possession of a bank and had then stipulated to the appointment of a receiver as an alternative to the attachment proceedings. Since the receiver was substituted for the attachment, her argument continues, she should be no worse off.

The trouble with this argument is that plaintiff never had a lien on the funds eventually received by the receiver from the thrift and loan company. An attachment lien is not created merely by the issuance of a writ but rather by the levy by an officer on specific property. (2 Witkin, Cal. Procedure (2d ed. 1970) p. 1586.) Thus plaintiff is in no worse position than she would have been had no receiver been appointed.

---

[3]Of course the court may pay the compensation or other approved expenses of a validly appointed receiver out of the funds of the receivership. (Code Civ. Proc., § 1042; 2 Witkin, Cal. Procedure (2d ed. 1970) p. 1646.)

Thus the trial court was clearly correct in holding that the plaintiff had priority under section 6756. What we have already said is sufficient to indicate that when respondent recorded the certificate of delinquency it acquired a lien which entitled it to a priority also under section 6757 since plaintiff's judgment lien did not come into existence until a later date.

The order is affirmed.

Kaus, P. J., and Stephens, J., concurred.

On November 20, 1972, the opinion was modified to read as printed above.