[Civ. No. 36239. First Dist., Div. One. Sept. 17, 1975.]

DIANE G. WILKINSON, Plaintiff and Appellant, v.
ERIC F. WILKINSON, Defendant;
STATE BOARD OF EQUALIZATION, Claimant
and Respondent.

## COUNSEL

Hawkins, Hawkins, Gardiner & Childers and Samuel W. Gardiner for Plaintiff and Appellant.

No appearance for Defendant.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Gary A. Larson, Deputy Attorney General, for Claimant and Respondent.

## Opinion

**SIMS, Acting P. J.**—Plaintiff (as purchaser under an agreement of sale with the Department of Veterans Affairs of the State of California) brought an action to quiet title to an alleged full equitable estate in certain property against numerous defendants allegedly seeking interests in or liens against that property. She has appealed from a judgment which upheld the claimed lien of the State Board of Equalization for unpaid use taxes due from plaintiff's former co-tenant who had quitclaimed his interest to her.

The trial court expressly found, "This action was tried and submitted by both sides on the theory that the only issue involved is the legal question of whether or not a lien filed under Revenue and Taxation Code section 6757 attaches to an equity possessed by the taxpayer under a contract for the purchase of real property entered into between the Department of Veterans Affairs and the taxpayer." Plaintiff contends on appeal that the trial court erred in finding that it did. It is concluded that the judgment of the trial court was correct and must be affirmed.

The court found that in 1958 plaintiff and defendant Eric F. Wilkinson, as purchasers, entered into an "Agreement of Sale of Property" with the Department of Veterans Affairs of the State of California which was recorded June 2, 1958. On October 3, 1967, the Board of Equalization recorded a lien against Eric F. Wilkinson pursuant to the provisions of section 6757 of the Revenue and Taxation Code. The recorded certificate reflects that the lien was for unpaid sales and use taxes incurred during the period April 1, 1965, to September 30, 1965, by Pacific Air Academy, a partnership consisting of Eric F. Wilkinson and another. A certificate of delinquency issued July 12, 1973, indicated that there was due, as incorporated in the judgment of the court, the sum of $595 tax, interest of $282.13 to July 31, 1973, and penalty in the sum of $120 for a total of $997.13, with continuing interest at the rate of one-half percent per month after July 31, 1973, on the sum of $595.

On October 20, 1967, Eric F. Wilkinson recorded a quitclaim deed conveying all of his right, title and interest in the property to plaintiff.

In this state it is established that a paramount lien for unpaid taxes depends solely upon legislative enactment, and it is elemental that the intent of the Legislature must be found in the applicable act. (See *Wright* v. *Standard Engineering Corp.* (1972) 28 Cal.App.3d 244, 247-248

[104 Cal.Rptr. 539]; and *Home Owners' Loan Corp.* v. *Hansen* (1940) 38 Cal.App.2d 748, 753-756 [102 P.2d 417].)

Prior to 1965[1] section 6757 of the Revenue and Taxation Code provided in pertinent part as follows: ". . . From the time of the filing for record, the amount required to be paid together with interest and penalty constitutes a lien upon *all real property* in the county owned by the person or afterward and before the lien expires acquired by him. The lien has the force, effect, and priority of a judgment lien . . . ." (Italics added.) Provisions for extending the 10-year period of the lien for an additional 10 years by filing a new certificate also refer to *"the real property in such county."* (Italics added.)

The provisions for enforcement of the Unemployment Insurance Act have had a similar although not parallel history. From 1945 (Stats. 1945, ch. 566, § 2, pp. 1103-1104; Stats. 1947, ch. 1158, § 5, p. 2631; Stats. 1951, ch. 1731, § 11, p. 4071) to codification in 1953, subdivision (a) of section 45.10 of the Unemployment Insurance Act had provisions creating a lien "upon all real property" etc. of the delinquent taxpayer upon the recording of a certificate of delinquency. Similar provisions were incorporated in section 1703 of the Unemployment Insurance Code upon codification (Stats. 1953, ch. 308, § 1703, pp. 1519-1520). In 1957,

---

[1] In the Retail Sales Tax Act of 1933 (Stats. 1933, ch. 1020, p. 2599) it was provided that a lien with "the force and effect of the lien of judgment against the retailer named in said notice of lien for the amount specified in such notice" would be created by filing for record "a notice of lien specifying the amount [delinquent] . . . and the name of the retailer liable for the same." (Stats. 1933, ch. 1020, § 26, p. 2607.) The section further provided for enforcement of the lien by seizure and sale. (*Id.* Cf. Rev. & Tax. Code, §§ 6776-6778 and 6796.) The section also provided for a limited form of garnishment (cf. Rev. & Tax. Code, § 6702) and for the qualified liability of a successor to the business. (Cf. *id.,* §§ 6811-6812.) It made all remedies cumulative. (Cf. *id.,* § 6827.)

In 1935 (Stats. 1935, ch. 357, § 14, p. 1262. Note also Stats. 1935, ch. 361, § 20, p. 1305, for enforcement under Use Tax Act of 1935) section 26 was recast to provide for summary judgment after filing a certificate of delinquency with the county clerk, and the creation of a lien by recording an abstract of that judgment. (Cf. Rev. & Tax. Code, §§ 6736-6739.) The judgment lien so created could be enforced by writ execution. The provisions for seizure and sale were broadened and the other remedies retained.

In 1939 (Stats. 1939, ch. 679, § 15, p. 2179; note also Stats. 1939, ch. 677, § 10, p. 2162, amending § 20 of the Use Tax Act of 1935) provisions similar to those originally enacted as sections 6757 and 6776-6778 of the Revenue and Taxation Code were added. The recording of the prescribed certificate gave rise to a lien for the delinquent amount and interest thereon "upon all real property of the retailer in such county, owned by him or which he may afterwards and before the lien expires acquire, which lien shall have the force, effect and priority of a judgment lien."

The reference to "all real property" was continued through codification in section 6757 (Stats. 1941, ch. 36, § 1, p. 550) and subsequent amendments. (Stats. 1941, ch. 247, § 39, p. 1351; Stats. 1943, ch. 889, § 6, p. 2734; and Stats. 1957, ch. 807, § 5, p. 2020.)

however, the provisions of section 1703 were amended to refer to "all the property" etc. (Stats. 1957, ch. 1188, § 2, p. 2479). Prior to the amendment of 1957 it was established that the recording of a certificate of delinquency under subdivision (a) of section 45.10 of the Unemployment Insurance Act could not defeat the rights of an assignee for value of a claim of the delinquent taxpayer against another, when the assignee gave notice of the assignment to the debtor before the time that the state served a notice to withhold (see Unemployment Insurance Act, §.45.8; cf. Unemp. Ins. Code, §§ 1755-1758; and Rev. & Tax. Code, § 6702), and before the state caused a warrant, effective as a writ of execution, to be served on the debtor by the sheriff (see § 45.10, subd. (b); cf. §§ 1785-1787 and §§ 6776-6778 of respective act and codes last cited). (See *People* v. *Biscailuz* (1951) 107 Cal.App.2d 71, 72 and 73 [236 P.2d 591].) There the court stated, "Priorities given by the act to the state's claim for delinquent contributions do not give the department any priority or preference in the absence of compliance with the steps outlined by the act for the perfection of a lien upon the property of a debtor. [Citations.]" (107 Cal.App.2d at p. 73.)

It may be assumed that prior to 1965 similar results might follow under the provisions then found in section 6757 of the Revenue and Taxation Code. The question in this case, however, is what is the effect of the provisions of section 6757 as they have read since 1965.

The 1965 amendment (Stats. 1965, ch. 863, § 2, p. 2464) deleted the word "real" as a modifier in both instances so the statute now refers to "all property in the county" and "the property in such county" in the respective instances referred to above. At the same time, further evidencing the intent of the Legislature to broaden the scope of the lien, yet at the same time qualifying that breadth, the Legislature added the last sentence which reads, "The lien imposed by this section shall not be valid insofar as personal property is concerned as against a purchaser for value without actual knowledge of the lien."

In *Wright* v. *Standard Engineering Corp., supra,* the court indicated that the provisions of section 6757 gave the state, which recorded a certificate after another creditor had levied an attachment against some of the property of the debtor and had had a receiver appointed, priority as to personal property, a dealer's reserve account in a thrift and loan company, which had not been attached or reduced to possession by the receiver (28 Cal.App.3d at p. 250). The United States Court of Appeals in construing similar language found in section 18882 of the Revenue

and Taxation Code observed, "We agree with the FTB that it did acquire a lien upon both the real property (if any—here there was none), and the personal property of the taxpayer. The phrase 'all property' is broad enough to cover both types of property, and we see no reason to give it a narrower meaning." (*In re Perry* (9th Cir. 1973) 487 F.2d 84, 85, see also p. 86 and Zirpoli, D. J., dissenting at pp. 87-88 [cert. den., *sub. nom. Franchise Tax Board of California* v. *Danning,* 415 U.S. 978 (39 L.Ed.2d 874, 94 S.Ct. 1565)]. See also *People* v. *Smejkal* (1968) 266 Cal.App.2d Supp. 971, 974 [71 Cal.Rptr. 925].) (The effect of Code Civ. Proc., § 674 on the priority of such a lien is discussed below.) In *Yuba River Power Co.* v. *Nevada Irr. Dist.* (1929) 207 Cal. 521 [279 P. 128], the court quoted from Ruling Case Law as follows: " 'The term "property" is sufficiently comprehensive to include every species of estate, real and personal, and everything which one person can own and transfer to another. It extends to every species of right and interest capable of being enjoyed as such upon which it is practicable to place a money value. As applied to lands the term comprehends every species of title, inchoate or complete. It is supposed to embrace those rights which lie in contract—those which are executory as well as those which are executed.' (22 R.C.L., p. 43, sec. 10.)" (207 Cal. at p. 523. See also *Southern Pacific Co.* v. *Riverside* (1939) 35 Cal.App.2d 380, 387 [95 P.2d 688]; Rev. & Tax. Code, § 103; Code Civ. Proc., § 17, subds. 1, 2 and 3; Civ. Code, § 14, subds. 1, 2 and 3, and §§ 654-663.)

In *Eisley* v. *Mohan* (1948) 31 Cal.2d 637 [192 P.2d 5], the court held that property, such as that involved in this case, being purchased by a veteran from the state under an executory contract of sale, was properly assessable to the vendee in possession. The court rejected the contention that the veteran should only be assessed on the value of his possessory interest. In defining the purchaser's rights the court stated, "The primary purpose of the Veterans' Farm and Home Purchase Act is to finance the purchase of farms and homes for veterans. Under the terms of the statute and contract with Eisley, equitable title and right to possession passed to him when he entered into the conditional sale transaction. [Citations.]" (31 Cal.2d at p. 644. See also *County of Los Angeles* v. *Butcher* (1957) 155 Cal.App.2d 744, 746 [318 P.2d 838]; *Rosenthal* v. *Landau* (1949) 90 Cal.App.2d 310, 313-317 [202 P.2d 810]; Op.No. 70-14 (1970) 53 Ops.Cal.Atty.Gen. 187, 188; and Op.No. 61-220 (1962) 39 *id.* 120, 124.)

From the foregoing it is clear that the interest of the veteran was property. The lien imposed by section 6757 obviously was intended to embrace it.

In *Roseburg Loggers, Inc.* v. *U.S. Plywood-Champion Papers, Inc.* (1975) 14 Cal.3d 742 [122 Cal.Rptr. 567, 537 P.2d 399] the Supreme Court found that the provisions of section 1703 of the Unemployment Insurance Code, which are similar to those of section 6757 of the Revenue and Taxation Code, did not give the state, which recorded a certificate of delinquency prior to the time a creditor of the taxpayer was granted a lien upon the taxpayer's cause of action against its debtor pursuant to the provisions of section 688.1 of the Code of Civil Procedure, priority over that creditor even though the state took steps to secure a similar lien, which had been related back by the trial court to the time the certificate of delinquency had been recorded. The court examined the nature of the lien created upon compliance with the provisions of section 688.1 and the principle that the first lien ordered would have priority. (See *Takehara* v. *H. C. Muddox Co.* (1972) 8 Cal.3d 168 [104 Cal.Rptr. 345, 501 P.2d 913].)

The opinion points out that the lien created by section 1703 can be enforced by levy and sale "in the same manner and with the same effect as a levy of and a sale pursuant to a writ of execution" by a warrant for the enforcement of the lien by the director. (Unemp. Ins. Code, § 1785. Cf. Rev. & Tax. Code, § 6776.) It points out that since section 688.1 expressly bars levy and sale on execution on a cause of action or judgment, the sole way the director could get an enforceable lien on the cause of action was through compliance with the provisions of section 688.1. (14 Cal.3d at p. 749.)

In *Roseburg* the following language may be of some solace to the appellant, "To recapitulate, we arrive at the following conclusions: First, since the Director sought to enforce his tax lien against Roseburg's pending cause of action, it was necessary, *in view of the property to be subjected to the levy,* that enforcement be effectuated pursuant to section 688.1 of the Code of Civil Procedure and not pursuant to section 1785 of the Unemployment Insurance Code." (*Id.,* p. 751; italics added.) Appellant may argue that because of the nature of the property involved here, an equitable interest under a contract of sale, a further step was necessary to enforce the tax lien by reference to the law under section 674 of the Code of Civil Procedure which is reviewed below. It should be noted, however, that the defect in *Roseburg* is not because a lien is not generally created by section 1703 (cf. Rev. & Tax. Code, § 6757) but because it cannot give priority in those situations where it cannot be subsequently enforced under a warrant as a writ of execution under section 1785. (Cf. Rev. & Tax. Code, § 6776.) "That the

interest of a vendee of real property, under a conditional sales contract, is subject to levy of attachment and execution, is too well settled to need support by citation of authorities." (*Hansen* v. *d'Artenay* (1936) 13 Cal.App.2d 293, 297 [57 P.2d 202]. See also *Fish* v. *Fowlie* (1881) 58 Cal. 373, 375-376; and *Lynch* v. *Cunningham* (1933) 131 Cal.App. 164, 173-175 [21 P.2d 154, 973]. Cf. *Belieu* v. *Power* (1921) 54 Cal.App. 244, 249 [201 P. 620].) Therefore, in this case the recording of the certificate of delinquency could create a valid lien against the interest of the taxpayer. Since it was recorded it should give the taxing authority priority over the plaintiff who claims under a quitclaim deed from the taxpayer, which can pass no more than his right, title and interest.

It is contended by analogy to the provisions of section 674 of the Code of Civil Procedure that the lien cannot extend to the executory interest of the purchaser under a contract of sale because he is not the "owner" of the real property. It is true that the recording of an abstract of judgment under that section will not create a lien which will attach to a mere equitable interest. (*Mercantile Collection Bureau* v. *Roach* (1961) 195 Cal.App.2d 355, 357 [15 Cal.Rptr. 710]; *Homeland Bldg. Co.* v. *Reynolds* (1942) 49 Cal.App.2d 176, 178 [121 P.2d 59]; *Cook* v. *Huntley* (1941) 44 Cal.App.2d 635, 641 [112 P.2d 889]; *Oaks* v. *Kendall* (1937) 23 Cal.App.2d 715, 719-724 [73 P.2d 1255]; and *Belieu* v. *Power, supra,* 54 Cal.App. 244, 246-251.) It is unnecessary to determine to what extent the above doctrine may be dependent upon a consideration of priorities which are not applicable in this case. Suffice it to say that the provisions of section 674, although they might have been persuasive in interpreting section 6757 prior to its amendment in 1965 are no longer controlling. Section 674 reads in pertinent part, " . . . and from such recording the judgment or decree becomes a lien upon all the *real property* of the judgment debtor, not exempt from execution, in such county, *owned* by him at the time, or which he may after and before the lien expires, acquire. . . ." (Italics added.)

The retention of the word "owned" in section 6757 when it was amended to cover "all property" does not render the doctrine evolved under section 674 applicable. "All property has an owner, whether that owner is the State, and the property public, or the owner an individual, and the property private. The State may also hold property as a private proprietor." (Civ. Code, § 669.) As between the state and the veteran purchaser, the latter is the owner, the retention of the legal title by the state is not significantly different from the situation of a deed with lien

retained, or a mortgage back to secure the purchase money. (See *Eisley v. Mohan, supra,* 31 Cal.2d 637, 643-644.)

Nor does the reference to a judgment lien render the tax lien subject to the same limitations as the lien created by section 674 of the Code of Civil Procedure. The distinction is highlighted in *In re Perry, supra.* There both the majority and minority opinions recognize that the statutory language of section 18882 which referred to "all property of the taxpayer in the county owned by him" covered all kinds of property. The dispute stemmed from the construction of the provisions of the Bankruptcy Act which only give priority when the lien is " 'perfected or enforceable at the date of the bankruptcy against one acquiring the rights of a *bona fide* purchaser on that date, whether or not such purchaser exists.' (11 U.S.C. § 107(c)(1)(B))." (487 F.2d at p. 85.) The majority held that since a judgment lien under section 674 of the Code of Civil Procedure would not give a lien on personal property which would be good against a subsequent *bona fide* purchaser, the tax lien was insufficiently perfected to prevail against the trustee in bankruptcy and the general creditors he represented. (*Id.,* at pp. 85-86.) The dissenting judge construed the taxing statute as giving a lien which would prevail against a *bona fide* purchaser and the trustee. He concluded that the majority had reduced the tax lien to the status of an execution lien rather than a judgment lien. He stated that the provisions "must be interpreted to mean that a tax lien is created which has the same 'force, effect and priority' as compared to other's interests in a delinquent taxpayer's real and personal property that a judgment lien has as compared to other's interests in a judgment debtor's real property. Because a judgment lien is valid as against the rights of a bona fide purchaser, *see* Page v. Rogers, 31 Cal. 293, 312-313 (1866), a tax lien with the same characteristics is also valid as against the rights of a bona fide purchaser." (*Id.,* at p. 89.)

Significantly both opinions noted that insofar as personal property is concerned, section 6757 of the Revenue and Taxation Code (and comparable § 1703 of the Unemp. Ins. Code) provided, "The lien imposed by this section shall not be valid insofar as personal property is concerned as against a purchaser for value without actual knowledge of the lien." The majority indicated that the omission of such a proviso from section 18882 was not significant. (*Id.,* at p. 89.) In the instant case it is not contended that the plaintiff is a purchaser for value without actual knowledge of the lien so the provision in section 6757 is not applicable, nor are the provisions of the Bankruptcy Act controlling.

In *Wayland* v. *State of California* (1958) 161 Cal.App.2d 679 [326 P.2d 954], the state attempted to assert that a tax lien having the "force, effect and priority of a judgment lien" should have greater priority and be sustained against a sale under a power of sale contained in a prior recorded deed of trust. The court concluded, "The term 'force and effect' is of common, everyday usage. Certainly, then, such words must be read in their common, accepted meaning; that is, by giving to something the force and effect of something else is to give equality to each." (161 Cal.App.2d at p. 682. See also *Roseburg Loggers, Inc.* v. *U.S. Plywood-Champion Papers, Inc., supra,* 14 Cal.3d 742 [122 Cal.Rptr. 567, 537 P.2d 399].) The equality, however, does not mean that the priority of the lien on "all property" should only be effective as to "real property." It is more reasonable to give the priority to all property that section 674 gives to an abstract of judgment with respect to real property.

In *O'Callaghan* v. *People* (1958) 165 Cal.App.2d 358 [332 P.2d 170], the court concluded, "We are impelled to the conclusion that the purpose of sections 6738 and 6757 was to insure effective and fruitful collection of delinquent taxes and that the Legislature undoubtedly was aware of the possibility that at the time the tax became due the taxpayer might not possess real property. Therefore, what might be termed an 'ambulatory lien' was created which would attach to subsequently acquired property in any county. By providing for the preservation and extention of this lien by the process of periodic recordation of the abstract of judgment or certificate in any county, the Legislature must have intended that there be no time or area limitation preventing this ambulant lien from attaching." (165 Cal.App.2d at p. 363.) If effective and fruitful collection of delinquent taxes is to be insured, it is necessary to give effect to the manifest intention of the Legislature in amending the tax lien statute in 1965. The *bona fide* purchaser of personal property is protected by the proviso in the statute. It is unnecessary in this case to determine whether the recording of the tax lien would give actual notice to one purchasing from a veteran holding an executory contract of purchase from the state. In this case the plaintiff, the veteran's spouse, had actual notice of the lien, and does not claim to be a *bona fide* purchaser.

The judgment is affirmed.

Elkington, J., concurred.

LAZARUS, J.*—This appeal poses only one question: Does a sales tax lien recorded pursuant to Revenue and Taxation Code section 6757 attach to a taxpayer's equitable interest in real property under a contract with the Department of Veterans Affairs for the purchase of the property? The majority, in affirming the judgment of the trial judge, agrees that it does. I am reluctantly unable to concur.

The facts and contentions of the parties have been accurately and fairly presented in the majority opinion. The ultimate question here, as I see it, is not as to the meaning of the term "all property" as used in the 1965 amendments to Revenue and Taxation Code section 6757; it is whether the Legislature intended by the amendments to change the long accepted principle of law that an equitable interest in real property is not an *"ownership"* of property to which a statutory lien can attach.

A Mere Equitable Interest in Real Property
was not Subject to a Tax Lien
Prior to the 1965 Amendments

Prior to the amendments to Revenue and Taxation Code section 6757 in 1965, this statute, like a judgment lien under Code of Civil Procedure section 674, applied only to real property. The language of Revenue and Taxation Code section 6757 (adopted in 1941, Stats. 1941, ch. 36, p. 550) was in fact patterned after the wording of Code of Civil Procedure section 674, and insofar as pertinent here was almost identical. In its original version section 6757 provided: "If any amount required to be paid to the State under this part is not paid when due, the board may within three years after the amount is due file for record in the office of any county recorder a certificate specifying the amount, interest, and penalty due, the name and address as it appears on the records of the board of the person liable for the same, and the fact that the board has complied with all provisions of this part in the determination of the amount required to be paid. From the time of the filing for record, the amount required to be paid together with interest and penalty constitutes a lien upon *all real property in the county owned by the person* or afterward and before the lien expires acquired by him. *The lien has the force, effect, and priority of a judgment lien* and shall continue for 10 years from the time of the filing of the certificate unless sooner released or otherwise discharged. The lien may, within 10 years from the date of the filing of the certificate or within 10 years from the date of the last

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

extension of the lien in the manner herein provided, be extended by filing for record a new certificate in the office of the county recorder of any county and from the time of such filing the lien shall be extended to the real property in such county for 10 years unless sooner released or otherwise discharged."[1] (Italics added.)

The significance of the critical language that has been underscored will become apparent when we reach that part of this discussion dealing with the 1965 amendments. There is no legislative history to give us a clue that would be of help in resolving any ambiguities resulting therefrom. We therefore turn first to case law to see how the language used in the statute was judicially interpreted prior to the amendments.

It has always been the rule in this state—which respondent concedes—that a judgment lien under Code of Civil Procedure section 674, applies only to real property to which the judgment debtor has legal title, and not to a mere equitable interest, even when accompanied by possession. (*Mercantile Collection Bureau* v. *Roach* (1961) 195 Cal.App.2d 355 [15 Cal.Rptr. 710]; *Cook* v. *Huntley* (1941) 44 Cal.App.2d 635 [112 P.2d 889]; 29 Cal.Jur.2d, Judgments, § 284, p. 262.) The rule is predicated on the express language of the statute, the terms of which apply solely to real property of the judgment debtor *"owned* by him at the time."

In explaining the rationale for the rule, in *Oaks* v. *Kendall* (1937) 23 Cal.App.2d 715 [73 P.2d 1255], an authority on which appellant heavily relies, the appellate court mentioned that a "mere equitable interest in real property which is acquired under a conditional sales contract to purchase land, is not such *ownership* of real property contemplated by the provisions of section 674 of the Code of Civil Procedure." (*Id.,* at p. 719; italics added.) Holding that an equitable interest in real property under a conditional sales contract could not be subjected to a judgment lien, the *Kendall* court added: "It is true that specific statutes in some other jurisdictions provide that judgment liens may attach to both legal and equitable titles to real property. Section 674, formerly 671, of the Code of Civil Procedure, which provides that 'An abstract of the judgment or decree of any court of this state, . . . may be recorded with the recorder of any county and from such recording the judgment or

---

[1] For purposes of comparison, Code of Civil Procedure section 674 states that when an abstract of judgment is recorded, it ". . . becomes a lien upon *all the real property* of the judgment debtor, not exempt from execution, in such county, *owned by* him at the time, or which he may afterward and before the lien expires, acquire." (Italics added.)

decree becomes a lien upon all the real property of the judgment debtor, not exempt from execution, in such county, *owned by him* at the time, or which he may afterwards and before the lien expires, acquire,' *has been repeatedly construed to limit the vesting of such lien to legal titles to real property to the exclusion of equitable interests therein.* In 3 Tiffany on Real Property, *supra,* it is said: [¶] 'The equitable interest of the vendee of land who has not yet received a conveyance is obviously not subject to the lien in those states in which no equitable interests are so subject.' " (*Id.* at pp. 719-720; italics added.)

The earlier decisions dealing with this subject were reviewed in *Belieu* v. *Power* (1921) 54 Cal.App. 244, 246 [201 P. 620], the court stating in its opinion: "It is clear, and is perhaps conceded, that property must be 'owned' by the judgment debtor before any lien can attach." At page 247, the court added: "While any interest in real property, legal or equitable, may be seized and sold under execution, only real property actually owned by the judgment debtor will support a judgment lien. That a mere equitable interest in real property acquired under a contract of purchase and sale is not such ownership as is contemplated by section 671 was clearly decided in the early history of the state."

Respondent's brief correctly mentions that a judgment lien is a creature of statute. The same is, of course, true of a tax lien created by Revenue and Taxation Code section 6757. It is inconceivable, of course, that the Legislature could have used the same language to describe the property to which a lien would attach in both statutes, but intended that the words should have a different meaning. In fact, respondent does not contend that the same rule did not apply to each of the lien statutes before the 1965 amendments to Revenue and Taxation Code section 6757, but argues that this rule was abrogated when the statute was amended. We must therefore now look to the amendments to see exactly what the Legislature did in the way of changing the preexisting law.

THE 1965 AMENDMENTS DID NOT ABOLISH THIS RULE

The language of Revenue and Taxation Code section 6757 remained the same after the 1965 amendments, except for the changes shown below. ". . . From the time of the filing for record, the amount required to be paid together with interest and penalty constitutes a lien upon all (real) property in the county owned by the person or afterward and before the lien expires acquired by him. The lien has the force, effect, and priority of a judgment lien and shall continue for 10 years from the

time of the filing of the certificate unless sooner released or otherwise discharged. The lien may, within 10 years from the date of the filing of the certificate or within 10 years from the date of the last extension of the lien in the manner herein provided, be extended by filing for record a new certificate in the office of the county recorder of any county and from the time of such filing the lien shall be extended to the (real) property in such county for 10 years unless sooner released or otherwise discharged. The lien imposed by this section shall not be valid insofar as personal property is concerned as against a purchaser for value without actual knowledge of the lien." (Underscored sentence has been added.)

Thus, the 1965 amendments deleted the modifying word "real" before the word "property" in two instances and added the final sentence. The query here, therefore, is whether the legal effect of these changes was to make both legal and equitable interests in real property subject to the tax lien, even though the taxpayer does not have legal title to the property.

Respondent is correct, of course, in arguing that the Legislature in substituting the words "all property" for "all real property" intended to extend the reach of the statute to all of the taxpayer's property, of every kind and character. And it is undoubtedly true that the generic term "property," standing alone, is broad enough to embrace "all matter and things, real, personal, and mixed, capable of private ownership". (See generally Civ. Code, § 14; Code Civ. Proc., § 17; Cal. Const., art. XIII, § 1.)[2]

What the Legislature did not do, however, seems to be of more importance here. It did not eliminate the requirement that the property to be subjected to the lien, regardless of its character, must be "property in the county *owned by the person.*" And it is abundantly clear from the authorities already referred to that a mere equitable interest in real property is not an ownership interest to which a lien will attach. If the Legislature had intended to change the law in this regard, it could have easily done so by striking this phrase. This it did not do.[3] The most

[2]The term "property" includes ". . . 'every species of estate, real and personal, and everything which one person can own and transfer to another. It extends to every species of right and interest capable of being enjoyed as such upon which it is practicable to place a money value. As applied to lands, the term comprehends every species of title inchoate or complete. It is supposed to embrace those rights which lie in contract—those which are executory as well as those which are executed.' " (*Yuba River Power Co.* v. *Nevada Irr. Dist.* (1929) 207 Cal. 521, 523 [279 P. 128].)

[3]Section 115 of the Revenue and Taxation Code provides that an " 'Interest' in any property includes any legal or equitable interest." It would seem that similar language

reasonable surmise as to the legislative purpose in amending the statute is therefore that it was only intended to abolish the distinction between real and personal property, and to make *all property owned* by the taxpayer subject to a lien, except as to a purchaser of personal property for value without knowledge of the lien. That this was the extent of the changes affected by the amendments would also seem to follow from Revenue and Taxation Code section 2, which specifically provides: "The provisions of this code in so far as they are substantially the same as existing statutory provisions relating to the same subject matter shall be construed as restatements and continuations, and not as new enactments."

The Legislature is presumed to have in mind the law as established by existing domestic decisions. Thus, as stated by the Supreme Court in *Cole v. Rush* (1955) 45 Cal.2d 345, 355 [289 P.2d 450, 54 A.L.R.2d 1137] (overruled on other point in *Vesely v. Sager* (1971) 5 Cal.3d 153, 167 [95 Cal.Rptr. 623, 486 P.2d 151]), a case cited in respondent's brief: "The significance of legislative action in the light of established law and of pertinent judicial decisions has been repeatedly recognized in this state. As we have so recently said in *Buckley v. Chadwick* (1955), *supra, ante,* pp. 183, 200 [288 P.2d 12, 289 P.2d 242], 'It is a generally accepted principle that *in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions* as have a direct bearing upon them.' The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made *is indicative of an intent to leave the law as it stands in the aspects not amended.*" (Italics added; see also *Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874].)

Our admonition from the Supreme Court is that: "Laws imposing taxes are *in invitum* and are to be strictly construed in favor of the taxpayer." (*Barker Bros., Inc. v. Los Angeles* (1938) 10 Cal.2d 603, 608 [76 P.2d 97]; see also *Knudsen Dairy Products Co. v. State Bd. of Equalization* (1970) 12 Cal.App.3d 47, 52 [90 Cal.Rptr. 533].)

---

would be enacted in a tax lien statute intended to cover both legal and equitable interests in property. Thus, the State of Washington in its tax lien statute clearly provides that when duly docketed the lien claim "shall become a lien upon the title to and interest in real and personal property of the taxpayer against whom it is issued and shall be the same as a judgment in a civil case duly docketed in the office of such clerk, . . ." (Rem. Rev. Stat. (Supp.) 8370-202.)

Furthermore, I am obliged to differ with the majority for still another reason. This is because the Legislature when it adopted the 1965 amendments also retained the provision that the tax lien "has the force, effect and priority of a judgment lien." (What better indication could there be that the Legislature had the analogy between the tax lien and judgment liens in mind when it adopted the amendments?)

Respondent argues that "this language was only meant to clarify questions of priority as between different taxholders, . . ." If this were so, why would it have been necessary to provide that in addition to "priority" the lien would have the "force and effect" of a judgment lien? And would not a tax lien have greater "force and effect" than a judgment lien if it were operative against interests in real property not "owned" by the taxpayer?

Moreover, as I interpret the authorities, there is little doubt as to the meaning of the language used in this clause from the cases in which identical phraseology in other tax lien statutes have been judicially construed.

*In re Perry* (9th Cir. 1973) 487 F.2d 84 (cert. den., *sub. nom. Franchise Tax Board of California* v. *Danning,* 415 U.S. 978 [39 L.Ed.2d 874, 94 S.Ct. 1565]), is a federal bankruptcy case involving the tax lien provisions for delinquent payments under the personal income tax laws in California. At that time section 18882 of the Revenue and Taxation Code read: "From the time of filing for recording the amount of tax, interest, and penalty set forth constitutes a lien upon *all property* of the taxpayer in the county, owned by him or afterward and before the lien expires acquired by him. *The lien has the force, effect, and priority of a judgment lien* and continues for 10 years from the date of the recording unless sooner released or otherwise discharged." (Italics added.)

The issue was as to whether or not the liens provided in the above sections would be good against bona fide purchasers of personal property, where the statutes did not explicitly provide such protection.

The United States Court of Appeals first pointed out that in California a recorded judgment creates a lien good against bona fide purchasers upon the debtor's real property; that the levy of a writ of execution is necessary to bind the debtor's personal property. The court then compared section 18882 with Revenue and Taxation Code sections 6757, 6757.5 and California Unemployment Insurance Code sections 1703, 1703.5, which read virtually the same but with additional provisos specifically protecting bona fide purchasers without actual knowledge of

the liens. In rejecting the argument of the California Franchise Tax Board that the absence of such provisos indicated the intent of the Legislature to have the liens under the personal income tax statutes apply against such purchasers, the court relied on the language *"force, effect, and priority of a judgment lien"* in deciding: "Each of the statutes that the FTB cites defines the 'force, effect, and priority' of the lien as that of a judgment lien. As we have seen, such a lien, until enforced by levy, is not good against *bona fide* purchasers of personal property. Thus the provisos in favor of such purchasers in the sales tax and unemployment compensation tax sections are perfectly consistent with the defined 'force, effect, and priority' of the liens. The provisos are unnecessary and redundant. They may well have been added out of an abundance of caution; there is no legislative history to tell us why they are there. *We cannot translate the absence of such provisos in §§ 18882 and 18882.5 into a determination by the legislature that the definition of the 'force, effect, and priority' of the liens in those sections means something different from what it says."* (*In re Perry, supra,* 487 F.2d 84 at p. 86; italics added.)

And in *Wayland v. State of California* (1958) 161 Cal.App.2d 679 [326 P.2d 954], the following interpretation appears in the opinion affirming a judgment in a quiet title action in favor of the taxpayer: "In addition we do not believe that the portion of section 1703 of the Unemployment Insurance Code, providing that the certificate of tax indebtedness shall have 'the force, effect, and priority of a judgment lien' can be as narrowly construed as do defendants. Their argument in this regard is that by use of the specific words, 'force, effect, and priority,' the Legislature intended the lien to resemble a judgment lien in the three specified characteristics, *and then only in a strict, literal sense.* While it is true, as defendants contend, that the Legislature could just as easily have declared such a lien to be a judgment lien for all purposes, the fact that it did not do so in this particular instance does not necessarily mean that the words used should be as strictly construed as do defendants. *The term 'force and effect' is of common, everyday usage. Certainly, then, such words must be read in their common, accepted meaning; that is, by giving to something the force and effect of something else is to give equality to each."* (*Id.,* at p. 682; italics added.)

In *O'Callaghan v. People* (1958) 165 Cal.App.2d 358 [332 P.2d 170], dealing with the provisions for extension of the lien in Revenue and Taxation Code section 6757, it was said: " '[A] reasonable construction of a statute is to be preferred and effect is to be given to all of its parts, including all the words therein contained which are to be interpreted according to their common acceptation.' "

Reference is made in the majority opinion to the Supreme Court's recent decision in *Roseburg Loggers, Inc.* v. *U.S. Plywood-Champion Papers, Inc.* (1975) 14 Cal.3d 742 [122 Cal.Rptr. 567, 537 P.2d 399]. While *Roseburg* and the cases therein cited involve statutes which include language similar to Revenue and Taxation Code section 6757, they were concerned only with the question of priority as between different types of liens, and do not touch upon the issue presented to this court for decision. Any comments in these cases about the far-reaching meaning of the term "all property," when unqualified and standing alone, is in no way disputed.

We need now only consider the relevance, if any, of *Eisley* v. *Mohan* (1948) 31 Cal.2d 637 [192 P.2d 5], a case referred to in the briefs of both parties. The question there was as to whether land which the petitioner possessed under an executory contract with the Veterans Welfare Board could be assessed for its full value by the county assessor for real estate tax purposes. Petitioner conceded that it had long been established that the taxing authorities could tax veterans upon the value of their right of possession, and the purpose of the litigation was to compel the respondent possessor to make his assessment on that basis. It was contended that anything in excess thereof was state-owned property exempt from taxation under the Constitution. The Supreme Court concluded, however, that the exemption of state-owned property from real estate taxes did not apply to a mere security title retained by the state. Having lost its exemption, the land was therefore held to be fully taxable to the vendee. (*Id.* at pp. 642, 643.) Thus, the equitable interest of a purchaser of land in possession is subject to real estate taxes, and, also, as mentioned in the authorities referred to above, is property of a judgment debtor that may be reached by a levy of execution.

But this has nothing to do with the effectiveness of a tax lien recorded under Revenue and Taxation Code section 6757 in the light of the existing language used in that section. I would conclude that the Legislature did not intend by the 1965 amendments to the statute in question to set aside the well established law that the equitable interest of a taxpayer under a conditional sales contract is not an "ownership" of property such as to make it subject to a tax lien and would therefore reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1975.